### Colton *vs.* Beardsley, Bigelow and Spooner.

Proof that an individual is reputed to be, and and has acted, notoriously, as a public officer, is *prima facie* evidence of his official character, without producing his appointment.

This exception to the general rule requiring the best evidence to be given, is founded upon the strong presumption that arises from the exercise of a public office, that the appointment to it is valid; and is made for the reason that it would be attended with general inconvenience to require full and strict proof of the appointment or election of public officers.

In an action against a person for an act which he had no right to do unless an officer, he must show that he was *prima facie* an officer *de jure*. Proof of acting as such under color of authority, and of reputation, is admissible evidence for that purpose; and if proved, is sufficient, in a collateral proceeding, to establish that character. POTTER, J. dissented.

The uniform practice of the courts has been to admit proof that officers have been reputed to be and have acted as such, in cases where they have been sued for their official acts and have sought to justify their acts as incumbents of the office. *Per* ROSEKRANS, J.

Proof of a call by the trustees of a school district, for a special meeting of the inhabitants, for the purpose of filling vacancies in the office of trustee, of the assembling of the inhabitants under that call, the election of two persons as trustees to fill vacancies, and of their acceptance by entering upon the duties of the office, is proof of an election by the competent authority, and constitutes the persons thus elected, *prima facie*, trustees *de jure*.

To defeat such *prima facie* title to the office, a party attacking it cannot be allowed to give evidence showing that no vacancy in the office of trustee existed when the persons were chosen.

The authority to call a special meeting to fill a vacancy in the office of trustee being vested in the remaining trustees, and the power to fill it, in the meeting when assembled under such call, the act of the trustees in calling the meeting, and of the meeting in filling the vacancy, are quasi judicial acts; inasmuch as both the trustees and the meeting must first have exercised their judgment and discretion, and determined and adjudged that a vacancy existed.

Hence, whether there was, or was not, a vacancy in fact, and if there was, whether it had existed for over one month before the election; and if it had, whether it arose from a cause which authorized it to be filled by the supervisor of the town, is wholly immaterial, in an action against the persons elected, for an act done by them as trustees; because they are not questions which can be traversed in such action.

Matters of that nature can only be traversed in a direct proceeding to set aside or quash the election. Until the election be so set aside or quashed

Colton *v.* Beardsley.

by such a proceeding, the persons claiming to be elected are protected for all acts done by virtue of the office held under color of such election.

When the jurisdiction of an inferior tribunal depends upon a fact which such tribunal is required to ascertain and determine by its decision, such decision is final until reversed in a direct proceeding for that purpose.

The test of jurisdiction, in such cases, is whether the tribunal has power to enter upon the inquiry, and not whether its conclusions in the course of it were right or wrong.

Where an individual is present at a special meeting of the inhabitants of a school district, called for the purpose of filling vacancies in the office of trustee, remains silent when the office is being filled as vacant, makes no objection when it is filled, and without objection sees the persons elected enter upon the duties and assume responsibilities in said office, he himself neglecting to act as trustee, he will be held *estopped* from denying the title of the persons so elected to the office, on the ground that, he himself being a trustee, at the time, there was no vacancy to be filled.

A general non-performance of the duties of an office is a refusal to serve. A refusal to serve may be as clearly and strongly inferred from the acts of an incumbent as from a direct assertion that he will not discharge the duties of the office.

Thus where a trustee of a school district had not done any business, as such, for some time previous to a special meeting called for the purpose of filling a vacancy in the office, and he attended such meeting and witnessed the election of another as his successor, without making any objection; *Held* that a virtual refusal to serve was clearly shown.

The insertion of an improper item in a tax warrant issued by the trustees of a school district will not vitiate the warrant, if otherwise valid, or render the trustees liable in trespass. The warrant is void for the excess, only, and the trustees personally liable in an action to recover back any part of such excess paid or collected. But an action to recover the value of the property sold on the warrant cannot be sustained.

Where a warrant issued for the collection of a second assessment was the same paper that had been used to collect a former assessment, with the exception that the first assessment had been detached from the warrant, the date of the warrant altered, and the second assessment attached to it; and the warrant thus altered was, with the second assessment, delivered to the collector; *Held* that there was nothing in this proceeding that operated to vitiate the warrant; it being, for all practical purposes; and in legal effect, a new warrant.

When a school district has no site for a school house, the trustees are authorized by the statute to fix one; but when a school house shall have been built or purchased, the site shall not be changed, without the supervisor's consent. In such case two things are requisite, to effect a change; the consent of the supervisor, and the vote of the district; and it matters not which has the precedence.

Colton *v.* Beardsley.

The certificate of the supervisor is only necessary to effect a change of site; it does not relate to the levying of a tax.

A school district, having a site on which there had been a building used for school purposes, and such building having been torn down, the inhabitants on the 12th of May, 1857, met and voted to change the site of the school house, and they also, by a separate resolution, voted to raise $200 to build a new school house. The assessment of the $200 tax bore date June 8, and the warrant, June 10, 1857, but the levy and sale were not made until 1858, under a renewed warrant. The consent of the supervisor, to a change of site, was obtained June 22, 1857. *Held* that whether the resolution to change the site was legal, or subsequently became so, was immaterial; that the district being without a school house, and owning a site on which a new house could be built, it had the right to raise the money; and that the resolution not designating where the new house should be built, and not being coupled with any other resolution or matter, the court could not say that the money was voted for an illegal purpose. And that in the absence of any express words, it could not infer that the tax was voted to be expended on the new site, when there was a legal site on which it might be expended.

THIS was an action to recover for the taking and conver-sion of certain property. The defendants justified their acts as trustees of school district No. 17, in the town of Dekalb, St. Lawrence county.

To prove his case, the plaintiff gave in evidence two warrants issued by the defendants as such trustees; one dated April 8, 1857, the other dated June 10, 1857; and proved that under the first the collectors seized and sold a heifer, worth $24, and under the second, two cows and a heifer, worth $76. On cross-examination the defendants asked the plaintiff's first witness if, at the several dates of the two warrants, they were not acting trustees of district No. 17. The question was objected to, on the ground that the defendants could not show themselves trustees by reputation, or by proving their own acts. The court sustained the objection, and the defendants excepted.

When the plaintiff rested, the defendants moved for a nonsuit, on the ground that the warrants on their face showed that the defendants were the trustees of said district, and that their proceedings, including the sale of the plaintiff's

property, were regular. The court denied the motion, and the defendants excepted.

The defendants then showed by the records of the district that the defendant Spooner was elected trustee for three years at the annual meeting held September 27, 1856; that Spooner and one Stammer were trustees in February, 1857, and that as such trustees they called a meeting of the inhabitants of said district for the 19th of February, 1857, to fill vacancies in the office of trustees, and to do such other business as might seem necessary; that notice was given of such meeting; that such meeting was held, at which time the defendants Beardsley and Bigelow were elected trustees, the former in place of Colton, and the latter in place of Stammer; and that Colton was present at such meeting. That meeting also voted to raise a tax of $10 to repair school house. The defendants further showed that another special meeting of said district was notified and held on the 12th of May, 1857, at which time it was voted to change the site of the school house of said district, and that it was further voted to raise by tax $200, for the purpose of building a school house in said district. The defendants produced the consent of the supervisor to change the site of said school house, dated June 22, 1857. The assessment which the first warrant was issued to collect was made March 14, 1857. The warrant was to collect $26.59, viz : the $10 voted at special meeting February 19, $10 levied by the trustees in addition to repairs of school house, $1.50 for book case, 46 cents for broom, 75 cents for wood, $2.25 for building fires, 13 cents for fixing stove, $1 for repairing school house in 1856, and 50 cents for banking school house. The tax ordered to be made on this warrant was not collected, and the same was renewed May 18, 1857, by the defendants Beardsley and Bigelow, and the property sought to be recovered was sold on such renewed warrant. The assessment for the second warrant was made June 8, 1857, for $200, and the warrant was issued for its collection. The defendants used for this

purpose the same warrant issued to collect the first assessment, after detaching it from the first assessment, altering its date, and attaching it to the new assessment, and delivered it to the collector for collection. This warrant was partially collected. It was renewed October 5, 1857, and again renewed by consent of the supervisor January 28, 1858. Under the second renewal the plaintiff's property was taken and sold.

The defendants proved, under objections, the ruling upon which was reserved by the court, that the defendants acted as trustees of said district after the 19th of February, 1857, up to the time of this trial, hiring teachers and doing the other business of the district, and that neither the plaintiff nor any persons other than the defendants have acted as such since that date. The defendants offered to show that at the annual meeting of said district, held September 25, 1857, Beardsley and Bigelow were duly elected trustees. This evidence was objected to and excluded, and the defendants excepted.

The plaintiff offered to show that at the annual meeting of the district in September, 1854, he was duly elected a trustee for three years, and had ever since and still resided within the district. This evidence was objected to, the objection overruled, the defendants excepted and the evidence given. The proof showed that on the site owned by the district was formerly an old shanty, which had been used for the purpose of a school house, but had been torn down before the $200 was voted. It was objected on the trial, by the plaintiff, and the questions at the time reserved by the court, 1st. That the first warrant was for a greater amount than had been authorized by the meeting; 2d. That its renewal was after it had expired; 3d. That the second warrant was the same one used in the first case, and was *functus officio;* 4th. That the meeting of May had no right to vote the tax for which the second warrant issued, as the supervisor had not then authorized a change of site. The evi-

dence being closed, the defendants again moved for a nonsuit, on the ground that they had shown a complete justification, &c. The court refused to nonsuit the plaintiff, and held as matter of law and instructed the jury; 1st. That the consent of the supervisor was a jurisdictional fact, and should have been obtained prior to the meeting of May 12, 1857, and that the vote at that meeting to change the site and raise $200 tax to build a house, and the warrant issued for the collection of it, were therefore void, and the defendants were trespassers for collecting the warrant; 2d. That it was not sufficient for the defendants in this action to prove that they were trustees *de facto* merely, but they must prove they were trustees *de jure*, and for that reason neither of the warrants issued by them afforded protection to them. To all of which the defendants excepted. The jury found a verdict for the plaintiff for $100.84.

*Dart & Tappan,* for the plaintiff.

*Morris & Vary,* for the defendants.

JAMES, P. J. The acts of mere usurpers of office, without any color of title, are undoubtedly wholly void, both as to individuals and the public; but where there is color of lawful title, the doings of such officers, as it respects third persons and the public, must be respected until they are ousted by an appropriate proceeding to try the validity of the title to the office. It has been repeatedly adjudged that the acts of an officer *de facto*, though his title may be bad, are valid, so far as they concern the public and the rights of third persons who have an interest in the things done. (*Green* v. *Burke*, 23 *Wend.* 490. *The People* v. *Stevens*, 5 *Hill*, 630. *The People* v. *Hopson*, 1 *Den.* 574. *Plymouth* v. *Painter*, 17 *Conn. Rep.* 585.) But in an action against a person for acts which he would have authority to do only as an officer, he must, in order to make out a justification, show that he is

Colton *v.* Beardsley.

*prima facie* an officer *de jure.* (*Green* v. *Burke* and *The People* v. *Hopson, supra. Fowler* v. *Beebe,* 9 *Mass. Rep.* 231.)

The question presented is, was there not proof, or an offer of proof, *prima facie* sufficient to show that the defendants were such trustees? The defendants offered to prove that when they issued the warrants they were acting trustees of this district, which was excluded, and it was subsequently proved that the defendants did act as trustees of said district, were the only persons who discharged that duty, and that they were reputed to be such officers.

It is a general rule that the best evidence should be produced of which any case in its nature is susceptible. This rule does not demand the greatest amount of evidence which can possibly be given of any fact. Its design is to prevent the introduction of any which, from the nature of the case, supposes that better evidence is in the possession of the party, to prevent fraud. This rule, however, was adopted for practical purposes, and should be so applied as to promote the ends of justice. It is therefore subject to exceptions, where the *general convenience* requires it; and naturally leads to the division of evidence into primary and secondary classes. Among the exceptions to the foregoing general rule, proof that an individual has acted notoriously as a public officer is *prima facie* evidence of his official character, without producing his appointment. (*Greenl. Ev.* § 83. *Berryman* v. *Wise,* 4 *Term Rep.* 366. *Wilcox* v. *Smith,* 5 *Wend.* 231–4. *U. S.* v. *Reyburn,* 6 *Peters,* 352, 367. *Rex* v. *Gordon,* 2 *Leach,* 581, 585, 586. *Rex* v. *Shelley, Id.* 581, *n.* 7 *Peters,* 100. *Bryan* v. *Walton,* 14 *Geo. Rep.* 185. *Allen* v. *State,* 21 *id.* 217.) On this subject *Greenleaf,* in his work on *Evidence,* (*vol.* 1, §§ 91, 92,) says: "The rule rejecting secondary evidence is subject to some exceptions, grounded upon the public convenience, or the nature of the facts proved. Thus the contents of any record of a judicial court, and of entries in any other public books or registers, may be

proved by an examined copy, and is admitted because of the inconvenience to the public which the removal of such documents might occasion, and also of the public character of the facts they contain. For the same reasons, and from the strong presumption arising from the undisturbed exercise of a public office, that the appointment to it is valid, it is not, in general, necessary to prove the written appointments of public officers. All who are proved to have acted as such, are presumed to have been duly appointed to the office, until the contrary appears, (*Wilcox* v. *Smith*, and *Plymouth* v. *Painter, supra ;*) and it is not material how the question arises, whether in a civil or criminal case, nor whether the officer is, or is not, a party to the record, (*Rex* v. *Gordon*, and *Berryman* v. *Wise, supra ; McGahey* v. *Alston*, 2 *Mees. & Wels.* 206, 211; 3 *Term Rep.* 632; 6 *id.* 663; 5 *B. & A.* 243; 2 *Campb.* 131; 3 *id.* 432 ;) unless, being plaintiff, he *unnecessarily avers* his title to the office, or the mode of his appointment, in which case the proof must support the entire allegation."

*Phillips*, in his Treatise on *Evidence*, (*vol.* 1, *p.* 432,) says : "It is not in general necessary to prove the written appointments of public officers; for this would be attended with general inconvenience, and a strong presumption arises from the exercise of a public office that the appointment to it is valid. The cases upon this subject sometimes appear to be governed by the doctrine of admissions, but it will be seen by the example that the exception is of a more extensive nature. In the case of all peace officers, justices of the peace, constables, &c., it is sufficient to prove that they acted in these characters, without producing their appointments." *Potter* v. *Luther* (3 *John.* 431) was an action of trespass *de bonis asportatis ;* the defendant pleaded that he was a deputy sheriff, and took the property by virtue of a fi. fa. against the plaintiff, and offered to prove by reputation that he was general deputy of the sheriff. The evidence was overruled, and the plaintiff had judgment. On certiorari to the supreme

court the judgment was reversed, the court holding the proof admissible and sufficient. The case of *McCoy* v. *Curtice* (9 *Wend.* 17) goes to the whole extent of the principle here contended for. The action was trover : the defendant justified the taking as a collector of a school district, under a warrant against the plaintiff. On the trial he produced the warrant, proved by parol that the persons signing it were reputed to be and acted as trustees of said district, and also proved by parol, under objection, that he acted as collector of said district, and as such took the property. The defendant had a verdict, and the plaintiff sued out a writ of error. The court in disposing of the case say : " It is a general rule in relation to all public officers that *they* may *establish* their *official character*, by proving that they are generally reputed to be, and have acted as such officers, without producing their commission or other evidence of their appointments ;" citing the various authorities to which allusion has hereinbefore been made.

Thus it will be seen that in all these cases the principle is distinctly recognized and acted upon, that in an action against a person for an act which he had no right to do unless an officer, he must show that he was prima facie an officer *de jure*, and that proof of acting as such under color of authority and of reputation is admissible evidence for that purpose, and if proved, is sufficient, in a collateral proceeding like this, to establish that character.

It therefore follows that a new trial should be granted for the refusal to receive such evidence when offered, or if not rejected when given, for disregarding it in the determination of the case.

But supposing I am mistaken in this view, did not the defendants prove themselves trustees *de jure* by other proof given on the trial ? As to Spooner the proof was clear. The question arises as to Beardsley and Bigelow. All the acts complained of took place between February, 1857, and March,

1858, previous to which the two latter named defendants claim to have been elected trustees.

The statute provides that each school district shall have three trustees, unless the inhabitants otherwise determine, whose term shall be for three years. Trustees have the power to call special meetings in their respective districts; the inhabitants of a district when convened at a special meeting have power to choose trustees as often as the office becomes vacant; in case a vacancy shall happen in such office by death, refusal to serve, removal out of the district, or incapacity, and the vacancy shall not be supplied by a district meeting within one month thereafter, the supervisor is authorized to appoint; and every person duly chosen or appointed trustee, who without sufficient cause shall refuse to serve therein shall forfeit the sum of $5, and every person so chosen or appointed and not having refused to accept, who shall neglect to perform the duties of his office, shall forfeit the sum of $10. This is the substance of the statutes. There rests in the trustees the power to call special meetings, and in such meetings the power to fill vacancies and impose a penalty against any person elected who shall refuse or neglect to serve.

The defendants showed a call for a special meeting of the inhabitants of said district for the purpose of filling the vacancies in the office of trustees, and the assembling of the inhabitants under that call, the election of the defendants Beardsley and Bigelow as trustees to fill vacancies, and their acceptance by entering upon the duties of the office. This was proof of an election by the competent authority, and constituted them *prima facie* trustees *de jure.* The plaintiff sought to defeat this *prima facie* title to office by attacking the regularity and legality of the election. He was permitted, under objection and exception, to give evidence in order to show that no vacancy in the office of trustee existed when the defendants were chosen. The admission of that evidence was error. The authority to call a special meeting

Colton *v.* Beardsley.

to fill a vacancy in the office of trustee being vested in the remaining trustees, and the powers to fill it, in the meeting when assembled under such call, the act of the trustees in calling it, and of the meeting in filling it, were quasi judicial acts, because both trustees and the meeting must first have determined and adjudged that a vacancy existed.

Therefore, whether or not there was a vacancy in fact, and if there was, whether it had existed for over one month before the election; and if it had, whether it arose from a cause which authorized it to be filled by the supervisors of the town, is wholly immaterial; because they are not questions which can be traversed in this action. Such matters can only be traversed in a direct proceeding to set aside or quash the election; and until such election be so set aside or quashed by such proceeding, the defendants are protected for all acts done by virtue of the office held under color of such election.

This is like the case of *Wood* v. *Peake*, (8 *John.* 69.) The defendant being sued for trespass, justified his acts as constable, under an appointment from three justices, to fill a vacancy. The plaintiff proved there was no vacancy; that the person whose office the defendant was appointed to fill had never refused to serve, was able to serve, and did serve. The evidence was objected to, but admitted, and the plaintiff had judgment on review. The court said, "the statute declares that if any constable chosen &c. shall refuse to serve, it shall be lawful for the inhabitants of the town to supply such vacancy at a special town meeting to be notified and held, &c., and that if the town shall not within fifteen days next after such refusal &c. choose another, it shall be lawful for any three justices of the peace, residing in or near such town, and they are required, by warrant under their hands and seals, to appoint any such officer which the town ought to have chosen, and every officer so appointed shall hold his office for so long time, and have the same powers, and be liable to the same penalties, as if elected. And if any person so appointed a constable, &c. shall refuse to serve,

he shall forfeit a penalty of $62.50. This appointment is a judicial act ; for the justice must first determine and adjudge that there is a vacancy in the office, and that the town neglected to fill it up. It is not traversable in such a collateral action. The appointment remains valid until it be set aside or quashed in the regular course, upon certiorari. It is certainly sufficient to justify the constable. He comes to the office by appointment, regular according to the forms of law, and by a tribunal having jurisdiction in the case, and he is bound to accept, under a penalty. He is not to inquire, at his peril, into the validity of the act. It is sufficient that three justices have authority to make such an appointment in a given case. It would be intolerably oppressive to place the constable in the dilemma of subjecting himself to a grievous penalty if he refuses, or of being prosecuted for trespass if he accept." The testimony to impeach the appointment was held inadmissible, and the judgment reversed. See this case approved in *Green* v. *Burke*, (23 *Wend.* 502.)

In this case the defendants showed their election by authority competent to elect to such an office in a given case, and that election remains valid until quashed or set aside by due process of law ; and the incumbents are protected for acts done in virtue of the office.

Again ; were it necessary, the plaintiff should be held estopped from denying the defendants' title to the office. He was present at their election, remained silent when the office was being filled, as vacant, made no objection when it was filled, and without objection saw the defendants enter upon the duties and assume responsibilities in said office, himself neglecting to act in his now claimed official character.

Again ; suppose the plaintiff not estopped, and that the defendants' title to the office could be tried in this action, how stands the case upon the proof ? Spooner's title was not denied ; no proof was given or offered, to show that Bigelow was not elected to an actual vacancy, and therefore the whole question would turn upon Beardsley's title. The

Colton *v.* Beardsley.

proof offered, to show that no vacancy existed for Beardsley to fill, was that the term for which the plaintiff had been elected, in 1854, had not expired ; and that he was then, and ever since his said election had been, a resident of the district. This did not show that no vacancy existed. It may all have been true, and probably was, and yet the office at the time vacant by reason of the plaintiff's refusal to serve, resignation or incapacity ; and after the other evidence, the legal presumption, in the absence of affirmative proof, was that a vacancy did exist. The court on the trial held the reverse. It held that proof of an election two years before, for three years, was *prima facie* evidence that the office was still held by such persons, notwithstanding it had been declared vacant by competent authority, another elected to fill it, and in possession. But the defendants did not rest upon the presumption of law ; they proved that the plaintiff had not done any business as trustee for some time before the special meeting at which Beardsley was elected, and that he was present at that meeting. This showed a refusal to serve. A refusal to serve is a general non-performance of the duties of the office. (*Spafford* v. *Hood,* 6 *Cowen,* 478.) It would never do to say that no act should operate to create a vacancy in an office, short of an absolute or declared refusal. A refusal to serve may be as clearly and strongly inferred from the acts of an incumbent, as a direct assertion that he will not discharge the duties of the office. (*The People* v. *Carrique,* 2 *Hill,* 93, 97.) A virtual refusal to serve was clearly shown in this case. The inhabitants of the district so understood and acted upon it, and the plaintiff's presence at the filling the vacancy, and subsequent conduct, approved their understanding and ratified their acts. Such being the case, Beardsley was, so far as the same can be inquired into in this action, legally elected, and was a trustee *de jure.*

The warrant dated April 8, 1857, was to collect $26.59. Of this sum $10 was voted at the special meeting, February, 1857, for the repairs of the school house, $10 was levied by

the trustees, they being authorized to levy that sum in each year for repairs, in addition to the sum voted by the district, and the remaining sum was for book case, broom, wood, making fires, and repairs. For none of the latter items, except the wood, were the trustees authorized to issue their warrant, without a vote of the district. But the insertion of this sum in the warrant does not vitiate it, or render the trustees liable in trespass. (*Seaman* v. *Benson,* 4 *Barb.* 444. *Easton* v. *Calendar,* 11 *Wend.* 90.) The warrant was void for the excess only, and the defendants personally liable in an action to recover back any part of such excess paid or collected. But an action to recover the value of the property sold on the warrant, cannot be sustained.

It is insisted that the second warrant was void because it was the same one used to collect the first assessment. The proof showed it to be the same paper, with the exception that the first assessment had been detached from it, its date altered, the second assessment attached to it, and the warrant thus altered, with the second assessment, delivered to the collector. I can discover nothing in such proceeding that operates in the least to vitiate the warrant ; it was, for all practical purposes, and in legal effect, a new warrant ; as much so as if its contents had been copied by the trustees on to a new piece of paper and signed by them.

The next objection is that the tax of $200 voted to build a school house, and the warrant to collect the same, were void, because the vote of the district to change the site of the school house was without the written consent of the supervisor. The statute declares that "whenever a school house shall have been built or purchased for a district, the site of such school house shall not be changed, nor the building thereon be removed, so long as the district shall remain unaltered, unless by the consent in writing of the supervisor of the town within which such district shall be situate," &c. (*Laws of* 1847, *ch.* 480, § 73. *Laws of* 1856, *ch.* 179, § 26.) This consent the plaintiff insists is essential to confer jurisdiction

upon the district to act upon the question of change. No doubt such consent must be obtained before a change can be effected ; but that the consent must first be obtained before the district can vote for a change of site, I deny. Such is not the language of the statute. When the district has no site, the trustees are authorized to fix one, but when a school house shall have been built or purchased, the site shall not be changed without the supervisor's consent. In such case two things are requisite to effect a change ; the consent of the supervisor and the vote of the district ; and it makes no difference which has the precedence.

This certificate of the supervisor is only necessary to effect a change of site; it does not relate to levying a tax. The powers of the district to vote a tax for any sum less than $400, for building a school house, is expressly conferred by statute ; and such a tax may be levied and collected before the inhabitants have designated a site for the building. (*Benjamin* v. *Hull*, 17 *Wend.* 439.) In this case the proof showed that the district had a site on which had been a shanty used for school purposes. That the shanty had been torn down; that on the 12th day of May, 1857, the inhabitants got together and voted to change the site of the school house, and that they also, by separate resolution, voted to raise $200, to build a new school house.

At this time the supervisor had not consented to a change of site, but his certificate was subsequently obtained, June 22, 1857, and this, together with the vote of the district, effected the change. The assessment of the $200 tax bears date June 8, and the warrant June 10, 1857, but the levy and sale was not until 1858, under a renewed warrant. (11 *Wend.* 91. 1 *Denio*, 221. 4 *Barb.* 447.)

Whether the resolution to change the site was legal, or subsequently became legal, is a matter of no moment, in the view which I take of this case, even though the district may have voted the tax with the expectation that the new house would be built upon the new site. At the time of the vote

the district was without any school house; it owned a site on which a new house could be built; it had the right to vote to raise the money; the resolution did not designate where the new house should be built, but simply authorized the raising of money to build a new house, and was not coupled with any other resolution or matter. Therefore the court cannot say that the money was voted for an illegal purpose. In the absence of express words it cannot infer that the tax was voted to be expended on the new site, when there was a legal site on which it might be expended. The case differs, in this particular, from that of *Benjamin* v. *Hull,* (17 *Wend.* 437.) There the resolution required the new house to be built on the site to be procured by the trustees, which right of selection the district had no power to delegate. It also differs from *Baker* v. *Freeman,* (9 *Wend.* 36.) There the district had consented to change the site without consent, and none was ever procured; they voted a tax of $32 to pay for the new site, which was clearly unauthorized; at a subsequent meeting they voted a tax to build a school house, and the two taxes were included in the one warrant: the court held both taxes void. The court did not pass upon the question whether a subsequent consent would legalize a change of site and the tax; nor did it appear that the district at the time was the owner of another site. It conceded the powers of the district to vote the tax as declared on its face, but it went back of the resolution and assumed the tax was voted for the purpose of building a school house, not upon the old site, but upon the one directed to be purchased, and that that might have affected and probably did affect the vote in that case, and that the district had no power to raise money to build a school house on that site.

The assumption of the court from the facts stated in the case may have been warranted, but whether that was so or not, or whether the legal conclusions based upon that assumption are sound or not, the proof in this case would not justify this court in the assumption that this tax was voted expressly

Colton *v.* Beardsley.

to build upon the new site. Whatever suspicions of that kind may prevail they cannot be made the basis of judicial action, unless sustained by proof.

A new trial should be granted; costs to abide the event.

ROSEKRANS, J. The defendants are sued for the taking and converting of the plaintiff's property, which was levied on by a collector of a school district in the town of Dekalb, St. Lawrence county, and sold by him by virtue of a warrant issued to him by the defendants as trustees of said school district. The defendants seek to justify the act as such trustees. It is settled by a long line of authorities, in our own state and in other states, that the acts of officers *de facto* are valid, so far as the public and third persons are concerned, and that neither their title to the office nor the validity of their official acts can be indirectly called in question in proceedings to which they are not parties. To this extent the official acts of an officer *de facto* are as valid and effectual as though he were an officer *de jure*. This rule is established for the benefit of the public at large, and those who have an interest in such official acts, but it gives no immunities to the officer *de facto* himself; nor does it confer upon him any rights, or shield him from any responsibility. When prosecuted for an act done by him as such officer which he would justify under the office, or when he attempts to enforce any legal right which appertains solely to the office, he is bound to show that he is an officer *de jure*. It is useless to add to the citations made by Mr. Justice POTTER to sustain this position.

But in order to show that the defendant is an officer *de jure*, it is not necessary in the first instance that he should do more than to give evidence that he is reputed to be and has acted as such officer. The rule requiring the best evidence to be given has this exception, which is founded upon the strong presumption that arises from the exercise of a public office, that the appointment to it is valid. The excep-

tion is made for the reason that it would be attended with general inconvenience to require full and strict proof of the appointment or election of public officers. (1 *Phil. Ev.* ch. 9, *Edw. ed., p.* 592. 1 *Greenl. Ev.* §§ 83, 92, *and notes.*) This rule was adopted in this court in the case of *Potter* v. *Luther*, (3 *John.* 431.) The plaintiff brought an action of trespass *de bonis asportatis* before a justice of the peace. The defendant pleaded that as one of the deputies of the sheriff of Washington county he took the goods by virtue of a *fi. fa.*, and offered to prove by reputation that he was a general deputy of the sheriff. The justice overruled the evidence, and required that the defendant should produce the appointment by the sheriff. The case was brought into this court, which said : " It is a general rule to admit proof by reputation that a person acts as a general public officer or deputy. In *Berryman* v. *Wise* (4 *T. R.* 366) the court of king's bench in England decided that in case of all peace officers, justices of the peace, constables, &c. it was sufficient to prove that they acted in those characters, without producing their appointments, and that, even in a case of murder." In *McCoy* v. *Curtice* (9 *Wend.* 17) the action was trover for a watch. The defendant pleaded the general issue, and justified as collector for a school district. He produced a warrant signed by the trustees, and proved by parol that the persons who signed the warrant were reputed to be and acted as trustees, and also proved that he (the defendant) had acted as collector of the district. This parol evidence was objected to when offered, and the objection was overruled. The jury found a verdict for the defendant; and on error brought to this court, Sutherland, J., delivering the opinion of the court, said : " It is a general rule in relation to all public officers, that they may establish their official character by proving that they are generally reputed to be and have acted as such officers, without producing their commission or other evidence of their appointment. This is well established as to all peace officers, sheriffs, constables, justices of the

Colton *v.* Beardsley.

peace," &c. ; and he cites 4 *John.* 366 ; *Potter* v. *Luther*, 3 *id.* 431 ; 6 *Binn.* 88 ; 9 *Mass. Rep.* 231 ; 7 *John.* 549 ; 9 *id.* 125 ; 12 *id.* 296 ; *Wilcox* v. *Smith*, 5 *Wend.* 231.

It is true that many of these cases merely established the doctrine that the evidence is competent to prove the official character of officers under whose process the party offering the evidence is seeking to justify his own acts ; but the court held, distinctly, that the parol evidence of the official character of the collector himself was competent. The same doctrine was held in *Sawyer* v. *Steele*, (3 *Wash. C. C. R.* 464.) In *Doe ex dem. Bowley et al.* v. *Barnes*, (8 *Q. B.* 1037, 56 *E. C. L. R.*,) the plaintiffs brought ejectment as church wardens and overseers of the poor of the parish of Nether Broughton, and gave parol evidence that they were the officers they claimed to be. The defendant objected that their appointment ought to be proved, and that it was not sufficient for the purpose of the action to show that they were acting as church wardens or overseers, at the time of the demise. The plaintiffs had a verdict, with leave to the defendant to move for a nonsuit, and on argument of the motion, the court held, Patterson, J., as follows : " It is a recognized principle that a person acting in the capacity of a public officer is *prima facie* taken to be so. The fact of itself does not prove any title, but only that the person fills the office." The rule for leave to move for a nonsuit was discharged. In *Butler* v. *Ford*, (1 *Cr. & M.* 662 ; *S. C., Tyr.* 677,) Lord Lyndhurst, C. B., said : "As to the question whether the defendants had proved themselves to be constables and watchmen under a local act, I think it was sufficient to prove that they acted in those characters. Evidence of this nature is evidence that they were duly appointed. It is not conclusive, but quite sufficient as a *prima facie* case." And Bailey, J. expressed the same opinion. In *McGahey* v. *Alston*, (2 *Mees. & Wels.* 206,) the plaintiff sued as vestry clerk, and the defendant pleaded that he was not vestry clerk. The point was expressly taken that the plaintiff's right to sue depended on

his being vestry clerk, and that unless he was legally placed in that office he must fail in that action. But the objection was overruled, and Parker, baron, said: "The plaintiff is a public parochial officer, and the rule is that all public officers who are proved to have acted as such are presumed to have been duly appointed, until the contrary is shown." The uniform practice of the court in like cases has been to admit proof that officers have been reputed to be and have acted as such, in cases where they have been sued for their official acts, and have sought to justify their acts as incumbents of the offices. Indeed, I have never known a case where other evidence of official appointment or election has been required. For these reasons I think that the judge at the circuit erred in excluding parol evidence that the defendants, at the time they signed the warrants, were acting as trustees of school district No. 17, De Kalb, and that the exception to such ruling was well taken. The defendants subsequently gave in evidence the proceedings of the district meeting on the 19th February, 1857, showing that at that meeting the defendant Beardsley was appointed trustee in the place of the plaintiff, and that the defendant Bigelow was appointed trustee in the place of Warden Stammer. They also proved by parol that the defendant Spooner had acted as trustee of the district since the annual meeting of the district in 1856; that all of the defendants had acted as trustees of the district since February 19, 1857; and that neither the plaintiff nor any other person had acted as such since that time. This last evidence was objected to by the plaintiff as incompetent and immaterial, and it was insisted that the defendants must show themselves officers *de jure*. The judge reserved the objection and received the evidence, subject to it. At a subsequent stage of the cause the judge was requested to nonsuit the plaintiff, on the ground that the defendants had made out a complete justification; that it appeared they were acting as trustees *de facto*, if not *de jure*; that there did not appear to be any irregularity in their proceedings; and that

Colton *v.* Beardsley.

the defendants were authorized to issue the warrants under which the plaintiff's property was sold. This motion was denied; and the judge held that it was not sufficient for the defendants to prove that they were trustees *de facto* merely, but that they must prove they were trustees *de jure ;* that for that reason neither of the warrants issued by them afforded them a protection, and that the only question necessary for the jury to consider under his ruling was the value of the plaintiff's property sold under the warrants. These rulings were severally excepted to by the defendants, and the judge was requested to charge the jury that if they were satisfied from the evidence that the defendants were trustees *de facto,* their acts were binding on the plaintiff. This request was refused, and the refusal was excepted to.

I am clearly of the opinion that the learned judge erred in denying the motion to nonsuit the plaintiff, upon the ground on which it was claimed : 1st. That the defendants had made out a complete justification; and 2d. That it appeared that the defendants were authorized to issue the warrants under which the plaintiff's property was sold. And I think also that the other ground, to wit, " that it appeared that the defendants were acting as trustees *de facto,* if not *de jure,"* was improperly overruled. The decision in effect excluded or disregarded the evidence that the defendants acted as trustees of the district after February 19, 1857, and denied to the defendants the legitimate force of that evidence. Within the principles laid down in the authorities cited, this evidence was *prima facie* evidence of the fact that the defendants were trustees *de jure* of the district when they issued the warrant under which the plaintiff's property was taken ; and this *prima facie* case was not overcome by any evidence given on the part of the plaintiff. It was not directly proved that Colton was ever a trustee. It must be inferred from the evidence, that at some time prior to February 19, 1857, he had been elected a trustee. The minutes of the meeting of that date state that the defendant Beardsley was appointed

trustee in the place of Colton, and one witness testified that
" Colton's time had not expired." This last expression could
only mean that the time for which he was elected, if he had
been elected, had not expired. But the same witness add-
ed that the plaintiff did not act or do any business as trustee
for some time before that meeting, and there is no evidence
in the case that he ever did act as trustee. Besides, the
notice of the meeting of February 19, 1857, was to fill a
vacancy in the office of trustee, and the minutes showed that
the vacancy was in the office to which Colton was elected.
To rebut the *prima facie* case made out by the defendants,
that they were trustees *de jure,* by proof that they acted as
such trustees, it was necessary that the plaintiff should have
proved his election and acceptance of the office, either by the
record or by his acts. The onus was cast upon him by the
*prima facie* case made by the defendants to overcome this
evidence by counter proof. He did not show his acceptance
of the office, if he was ever elected ; or that he did not refuse
to accept the office ; ' or that he did not refuse to serve ; or if
he accepted the office, that he had not resigned it ; or that
he had not become incapacitated to serve as trustee. A va-
cancy in his office could have occurred by either of these cir-
cumstances, and a vacancy can occur by the removal of a
trustee from office for willful neglect of duty. (1 *R. S. 5th
ed.* 897, § 114. *Id.* 889, § 71.) No presumption could be
indulged that the trustees, or the district, had acted illegally
in their proceedings to fill a vacancy in the plaintiff's office.
The plaintiff was bound to show that he was trustee *de jure,*
in order to overcome the case made by the defendants. The
evidence showed that Beardsley was trustee *de jure,* and the
plaintiff was not. These considerations would seem to be
sufficient to reverse the judgment and to require a new trial.
It may be that on another trial the plaintiff will be able to
prove his election as trustee, his acceptance of the office, and
that he had not resigned the office or become incapable of
acting as trustee ; that he continued to reside in the district,

and that he had not been removed from his office. And it may be for the interest of the parties that we should consider the case in the light of such evidence. I have no doubt that if such evidence shall be given, the plaintiff cannot recover in this action. The statute has made it the duty of the trustees of school districts, and conferred upon them the power, to call special meetings of the inhabitants of the district liable to pay taxes, *whenever they shall deem it neces-sary and proper.* (1 *R. S.* 5*th ed.* 898, § 119, *sub.* 1.) A clerk of the district is required to give notice of special meetings when the same shall be called by the trustees. (*Id.* § 118, *sub.* 2.) A special meeting is required to be held in each district whenever called by the trustees, (*Id.* 895;) and the inhabitants, when lawfully assembled at any district meeting, have power to choose a trustee as often as the office of trustee is vacant. (*Id.* 894, § 99, *sub.* 3.) Under these provisions of the statute, the question whether there is a vacancy in the office of any trustee must be determined *in limine* by the other trustees. It is a question calling for the exercise of their judgment and discretion, and their action upon it partakes of the character of a judicial act. And it is of the essence and nature of such acts, whether the power to perform them is committed to a court or a body of men or to an individual, that they are final and conclusive, except in a direct proceeding for their reversal; and that they can-not be inquired into or questioned collaterally. When the jurisdiction of an inferior tribunal depends upon a fact which such tribunal is required to ascertain and determine by its decision, such decision is final until reversed in a direct pro-ceeding for that purpose. (*Brittain* v. *Kennard,* 1 *Brod. & Bing.* 432; *S. C.,* 4 *Moore,* 50. 12 *Pick.* 572, 582, 583. *Ex parte·Watkins,* 3 *Peters,* 202, 209. *Supervisors of Onondaga Co.* v. *Briggs,* 2 *Denio,* 33, 34. 11 *Wend.* 95. *Phil. Ev.* ch. 1, § 5, *note* 293. 2 *id., Edw. ed.,* 15 *and fol. Weaver* v. *Devendorf,* 3 *Denio,* 117, 120, *and authorities cited. Broom's Leg. Max.* 56 *to* 66. *Henderson* v. *Brown,*

1 *Caines,* 90, *Kent and Livingston, Js.*) The test of juris-diction in such cases is, whether the tribunal has power to enter upon the inquiry, and not whether its conclusions in the course of it were right or wrong. (1 *Q. B. Rep.* 66. *Reg.* v. *Bolton,* 41 *Eng. C. L. Rep.* 439. *Cave* v. *Mountain,* 1 *Man. & Gr.* 257; 39 *Eng. C. L. Rep.* 432.)

An act of congress passed February 28, 1795, (1 *Stat. at Large,* 424,) " provided that whenever the United States *shall be invaded or be in imminent danger of invasion* from any foreign nation or Indian tribe, it shall be lawful for the president of the United States to call forth such number of the militia of the state or states most convenient to the place of danger or scene of action as he may judge necessary to re-pel such invasion, and to issue his order for that purpose to such officer or officers of the militia as he shall think proper." Under this act the president made his requisition upon the state of New York for a portion of her militia. One Mott was summoned to service under this requisition and failed to comply, and was tried by a court martial and fined, and his property was seized to satisfy the fine. He brought replevin in this court, and the defendant justified under the requisi-tion of the president and the proceedings under it. The su-preme court gave judgment against the defendant, and the court for the correction of errors affirmed it. The case was removed to the supreme court of the United States, and that court held unanimously (*Martin* v. *Mott,* 12 *Wheat.* 19, 31) that the authority to decide whether the exigency had arisen belonged exclusively to the president, and that his decision was conclusive upon all other persons; that whenever a stat-ute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction that the statute constitutes him the sole and exclusive judge of the existence of those facts. The case of *Vanderheyden* v. *Young* (11 *John.* 150) arose under the same act of congress, and was similar in its features to those of *Martin* v. *Mott,* (*supra.*) And in that case Spencer, J.

says: " It is a general and sound principle that whenever the law vests any person with the power to do an act and constitutes him a judge of the evidence on which the act may be done, and at the *same time contemplates* that the act is to be carried into effect through the instrumentality of agents, the person thus clothed with power is invested with discretion, and is, *quo ad hoc,* a judge. His mandates to his legal agents on his declaring the event to have happened, will be a protection to those agents ; and it is not their duty or business to investigate the facts thus referred to their superior, and to rejudge his determination." In *Jenkins* v. *Waldron* (11 *John.* 114) it was held that officers required by law to exercise their judgment are not answerable for mistakes in law, or mere errors in judgment, without fraud or malice. The case of *Wood* v. *Peake* (8 *id.* 69) is somewhat analogous to the one under consideration, and contains a principle which I think establishes a sure defense in this action. The sixth section of chapter 78, laws of 1801, provided that " if any constable chosen &c. *shall refuse to serve, it shall be lawful for the inhabitants of the town to supply such vacancy* at a special meeting to be notified and held, &c., and that if the town shall not within 15 days next after such refusal choose another, it shall be lawful for any three justices of the peace residing in or near such towns, and they are required, by warrant under their hands and seals, to appoint every such officer which the town ought to have," &c. Peake sued Wood in the Montgomery common pleas in trespass for taking his property, and Wood justified under an execution issued by a justice of the peace and an appointment of himself as constable under this act, by three justices, which stated that Jonathan Lawrence, one of the constables of the town, had for more than 15 days past refused to serve in his office, and the town not having appointed one in the room or stead of Lawrence, that therefore the three justices appointed (the defendant) Wood a constable. The plaintiff proved the election of Lawrence as a constable, and offered to prove that

Lawrence never did refuse to serve as constable, nor was he unable to serve, but that he actually did serve as constable three days after the date of Wood's appointment, and three months afterward. This evidence was objected to, but was admitted, and upon it the plaintiff had judgment, which on error to this court was reversed. The cause was argued in the supreme court by two of the most distinguished counsel in the state—the late lamented Daniel Cady, afterwards one of the justices of this court, and Abraham Van Vechten. It was insisted for the plaintiff in error that the appointment by the three justices was a judicial act, and being in a case in which they had jurisdiction, it was conclusive; that the act of the justices could only be corrected by a direct proceeding for that purpose; and that the common pleas had no right to decide upon the validity of the appointment. For the defendant in error it was insisted that the power given to the justices was special, and must be strictly pursued; that it could only be exercised in case an officer chosen should refuse to serve, and that it appeared in the case that Lawrence had not refused to serve; that the justices therefore had no authority or jurisdiction, and the appointment was void. The court made use of this language : " This appointment was a judicial act, for the justices must *first* determine and adjudge that there is a vacancy in the office, and that the town neglected to fill it. It is not traversable in such a collateral action. The appointment remains valid until it be set aside or quashed in the regular course, upon *certiorari*. It is certainly sufficient to justify the constable. He comes to the office by an appointment, regular according to the forms of law, and made by a tribunal having jurisdiction in the case; and he is bound to accept under a penalty. He is not to inquire at his peril into the validity of the act. It is sufficient that these justices have authority to make such an appointment in the given case." *Although the defendant in that case was a ministerial officer, and the court say, " the appointment was clearly sufficient to justify the constable,"*

yet the case is not decided upon the character of the officer, but upon that of the act by which he held his office. The court say the appointment was a *judicial act.* This term is used by way of accommodation. Perhaps it would have been as well to have said that the making of the appointment was in the nature of a judicial act, as it called for the exercise of judgment and discretion.

The power was not exercised by the justices in their capacity of judges or as a court. (*Rice* v. *Parkman, Parker, J.,* 16 *Mass. R.* 330.) It might have been delegated to a clerk of the court, had the legislature seen fit, and within fifteen days after the vacancy in the constable's office. It was delegated to the inhabitants of the town. The power did not call for any decision between parties to an action; nor did it require the entry of any judgment upon the facts; but as it required the exercise of judgment and discretion and the determination and decision of a question of fact, the nature of the power was quasi judicial, and when exercised the decision was final, and conclusive until reversed in a direct proceeding for that purpose, and could not be questioned collaterally. (*Van Wormer* v. *Mayor of Albany,* 15 *Wend.* 262.) The effect is the same, upon whomsoever such a power is conferred, whether it be the president of the United States, justices of the peace, the inhabitants of a town or school district, or the trustees of a school district. The case of *Wood* v. *Peake* (*supra*) is cited with approval in *Green* v. *Burke,* (23 *Wend.* 502, 3,) by Cowen, J. He says, "though the place (constable's office) being full was a jurisdictional objection, yet the question was one on which the justices had power to pass judicially. There are many such cases." Applying this principle to the case before us, it is clear that the determination of the trustees that there was a vacancy in the office, and their act in calling a special meeting of the inhabitants of the district to fill the vacancy, and the act of the special meeting in filling it, were final and conclusive, and not to be questioned collaterally. I lay out of the case, entirely, the fact that the

plaintiff was present at the special meeting and then said by his silence that his office was vacant. It is unnecessary to inquire whether his acts do not amount to an estoppel to his alleging that his office was not then vacant; although my impression is that it should have that effect. The case of *Cummings* v. *Clark*, (15 *Verm. Rep.* 653,) cited by Mr. Justice POTTER, is not analogous to this case, and if it were, I think the doctrine of the other cases to which I have referred, which hold the determination of the trustees conclusive that the office of their co-trustee was vacant, is to be preferred. In that case the defendant justified in trespass under a warrant to collect a highway tax. He had been appointed to fill an office for the reason that the incumbent had refused to act, and Redfield, J. said: "The refusal to act is not *ipso facto* vacating an office. There is nobody to exercise a judicial discretion on that subject, to declare the office vacant. The statute under which the defendants in the case acted, (1 *R. S.* 897, § 114, *5th ed.*,) declares that a vacancy in the office of trustee may be occasioned by the death of a trustee, *his refusal to serve,* his removal out of the district, &c. Perhaps the legislature intended *that the refusal to serve* should mean a *refusal to accept the office;* but how a vacancy can be filled in any case by the district or town superintendent, or how the remaining trustees can call a special meeting of the inhabitants of the district to fill a vacancy, without first determining whether a vacancy has occurred, is beyond my comprehension. The case of *Wood* v. *Peake* (*supra*) was cited in *Van Orsdall* v. *Hazard*, (3 *Hill,* 249,) by Cowen, J. He says of it, "that it looks strongly in the direction of holding that the appointment by the justices was a judicial act, and if correct in principle the appointment is conclusive." He adds: "I confess the exercise of the power to appoint in a given case has always appeared to me rather an act of ministerial or executive than judicial power." This may be conceded to be correct, that the appointment to office is a ministerial or executive act;

but it must be remembered that the determination that there is a vacancy in the office necessarily precedes the act of appointment, and that decision involves the exercise of judgment and discretion. The decision is final and cannot be inquired into collaterally; and all action founded upon it must necessarily be of the same nature.

The other questions arising in the case have been considered by my brethren, and I concur in their views in relation to them. For the reasons stated, I think the judgment should be reversed and a new trial granted, with costs to abide the event.

POTTER, J. (dissenting.) The defendants in this action are sued directly for their wrongful official act, by which they took the property of the plaintiff, and disposed of it without authority of law; and the question is whether they, (not acting as ministerial officers,) and sued *directly as parties* to the action, for the tortious act, make a sufficient defense by showing themselves to be acting as officers *de facto*. The judge at the circuit held that this was not sufficient, and held also, that in such case the defendants must show themselves to be officers *de jure*. If the judge at the circuit was wrong in so holding, the judgment should be reversed, for every other decision excepted to is merged or swallowed up in this. This question should be first directly decided. It should not be evaded. There is another question which, on the argument, was urged by counsel, and is now treated, here, as if it was *this* same question, but it is not; and deciding such different question, does not decide this. Some nine cases have been cited to prove that *a ministerial officer, de facto, such as a sheriff, bailiff, constable, tax collector or school district collector, acting under process issuing either from a court of general jurisdiction, or from a body of limited jurisdiction, if the subject matter is within that jurisdiction, is protected, if the officers who issued such process are officers de facto.* These cases can be multi-

plied.  I have found in my researches not less than *fifty*
cases equally strong and conclusive, to the same point with
those cited.   But as that is not the question to be decided,
enough have been cited to prove that undoubted and well
settled proposition.

It also seems to be further necessary, in presenting the real
question to be decided in this case, to disembarrass it of cer-
tain other matters that have been discussed which do not
belong to the case, in order that the *real* question, and that
only, may be decided.

1. It is conceded that trustees of school districts have cer-
tain *judicial* duties to perform, and it is, I think, clearly the
law that in the performance of such duties they are not re-
sponsible for any error of judgment, misjudgment of law, or
mistake in fact, while acting within their jurisdiction and
the scope of their powers; and that such acts cannot be re-
viewed collaterally.   So far, then, as relates to any errors or
mistakes committed within the jurisdiction of such officers,
this question need not be further discussed.

2. It is equally well settled that the acts of judicial as
well as ministerial officers acting as such officers *de facto*, by
color of title, are as valid, *so far as the public or the rights
of third persons are concerned, as though they were officers
de jure.*   And when they are not parties to the proceeding,
their title cannot be inquired into collaterally, nor can the
title of a *ministerial or executive officer* be inquired into col-
laterally, even though he be a party to the action, if the
process be fair on its face; and the officer who issued it had
jurisdiction of the matter.   Nor is *this* the question to be
decided here.

It is a remarkable feature of the cases cited, as well as of
the multitude not cited, that each and every one of them
have qualified the rule laid down, by the use of the same
language of qualification, to wit, that the acts of such *de
facto* officers are valid, "*so far as the public or the rights
of third persons are concerned.*"   What is the significance

and meaning of this *universal* qualification? Surely it has not been so long continued as mere ornament or surplusage. It must mean something. Who is there except the public, and third persons, that *can be* concerned? In what cases would not the acts of *de facto* officers be valid? It is at least fair to assume, that the most learned and distinguished jurists of the country for a period of two hundred years would not have continued *this useless qualification if* the rule was *universal.* I will then assume that the rule is *not* universal, and look for the exception and the reason of it. Now let us examine the cases cited, to prove that the ruling at the circuit was error, and see if they establish it. (*McCoy* v. *Curtice* (9 *Wend.* 17) was an action against a school district collector, (a ministerial officer,) for taking the plaintiff's watch for a school tax. The defendant proved that he acted as collector, proved his warrant signed by two trustees, and proved the organization of the district, &c. by parol. The court permitted the defendant to prove that the trustees were reputed to be such, deciding what we have above conceded to be the law. That is all of that case. In *The People* v. *Cook,* (14 *Barb.* 287,) Mason, J. was discussing the objection that had been raised, that the election in a certain district was void, for the reason that one of the officers who held the election omitted to take the oath prescribed by statute. He held, most properly, that the officer was one de facto, and that *as far as the public and third persons were concerned,* his acts were valid. The case of *The People* v. *Yates* (4 *John.* 366) is also cited, but I do not find any principle there laid down having any application to this case. In the case of *Potter* v. *Luther,* (3 *id.* 431,) the defendant was sued in trespass *de bonis asportatis;* he pleaded that he was deputy sheriff, and that he took the goods by virtue of a fieri facias; and offered to prove by reputation that he was a deputy. He was a *ministerial* officer. The court correctly decided that such proof was proper. (*The People* v. *Collins,* 7 *id.* 549.) This was a motion for a

mandamus against the defendant, town clerk, to compel him to record the survey of a road laid out by the commissioners. The clerk, in his answer, put his refusal on the ground that the commissioners had not sworn into office, and that one of them, Zacheus Higby, junior, had signed his name without adding the junior. The court ordered the mandamus ; holding that the clerk, a mere ministerial officer, had no right to decide on the acts of such officer *de facto,* and repeating the doctrine that the acts of officers *de facto* are valid *so far as the public and third persons are concerned.* I do not think that this case establishes much, on the point in question, to be decided. In *McInstry* v. *Tanner,* (9 *John.* 135,) on certiorari, one objection to the judgment was, that the justice was a minister of the gospel, and the proceedings therefore *coram non judice.* The justice denied this, in his return. The justice was *not a party* to the action, and this was a collateral question. The court held that even if the objection was true, the court could not take notice of such an objection ; he was an officer *de facto,* and no such issue could be raised, repeating the qualified rule as above. The case of *Reed* v. *Gillet* (12 *John.* 296) was an action of debt on a judgment. The question decided was one of the sufficiency of evidence to sustain a judgment, and has in it no relevant point applicable to this case. The case of *Wilcox* v. *Smith* (5 *Wend.* 231) is also cited. That was a case where the action was also brought against a constable in trespass *de bonis asportatis.* He justified under an execution issued by a justice of the peace of Orleans county, upon a judgment rendered by him. The execution was regular on its face ; the justice had been acting as such. The court repeated the well established doctrine that the acts of officers *de facto* are as valid, when they concern the public or the rights of third persons, as though they were officers *de jure.* The case cited from 6 *Binney,* 88, has no reference to the question decided in this case. The case of *Fowler* v. *Beebe,* (9 *Mass. Rep.* 221,) if it proves any thing, establishes the very converse of

the principle for which it seems to be cited. It is a case where the defendant in an action put in a plea in abatement, setting forth that one Day, the deputy sheriff, who served the writ, was appointed such by one Smith, who claimed to be sheriff, and then set forth that Smith had not been legally appointed sheriff, and had no power to make such appointment. The plaintiff demurred, and the question was argued upon this demurrer, to wit, whether the service of the writ was legal. The sheriff was a ministerial officer. Parsons, Ch. J., said: "Smith (the sheriff) *is no party to this record*, nor can he be legally heard in the discussion of this plea, although our decision would as effectually decide on his title to the office *as if he were a party.*" This would be judging a man unheard, contrary to natural equity and the policy of the law. From considerations like these has arisen the distinction between the holding of an office "*de facto*" and "*de jure;*" and they held that it was sufficient that he was an officer *de facto*. But the court added, among other things, "if the action should be commenced against one claiming to be sheriff, for an act which he does not justify *but as sheriff*, he *would be a party*, and the legality of his commission might come in question, and meet a regular decision." Upon the cases above reviewed, it is argued and held that the circuit judge erred, in holding "*that it is not sufficient for the defendants in this action to prove that they were trustees de facto, merely; but that they must prove that they were trustees de jure.*"

If this ruling was error, it is not because either of the above cases hold it to be so. Neither of them, except *Fowler* v. *Beebe*, touch that question, and that case, I think, *actually sustains the ruling.* It holds that when the officer is a *party*, and is sued for an official act, the legality of his title to the office might be decided. The question then is still open, so far as the above authorities are concerned, (except the last,) to be decided upon principle, and upon authority.

First, then, upon principle. There is no question which

the courts have watched with greater jealousy, than the power conferred by statute upon individuals, upon corporations or upon bodies of inferior jurisdiction, to divest the citizen of his estate. Whenever this power is permitted to be exercised, the courts have been ever vigilant to confine the exercise of the power to the strictest rule of expressly specified limits; and when such a power has been exercised officially, the officer is bound to show his authority at every step, and his right to exercise the functions of his office. Nor does the law perceive any hardship in requiring the officer, who is bound to know whether he be one or not, to show by what authority he divests another of his estate. This is a safeguard demanded for the protection of private rights. There would be no safety without it.

It has been plausibly and ingeniously urged that this principle creates a great hardship in localities where trustees of school districts are often illiterate, or men of limited education, and the office, at best, an unthankful one, and that strict construction upon their acts makes it one even of peril. This may be true; but if the great safeguard of the citizen— the well established principle of protection to private rights— is to be made to bend to arguments "*ab inconvenienti*," we are at sea in dangerous navigation, without our compass.

2. Upon a most careful and deliberate review of cases, I am satisfied that the judge at the circuit correctly ruled on this point, upon authority. I have been unable to find a case decided in the courts of this state holding the law otherwise. I have found *strong*, well considered cases, not only in this state, but in several of the adjoining states, in point, and expressly laying down the same rule as did the judge at the circuit, and not one to the contrary. The case of *Blake* v. *Sturtevant* (12 *N. H. Rep.* 567) was an action of trespass, *de bonis asportatis*, against the selectmen, (whose office is substantially, in many respects, like that of school trustees,) for taking the plaintiff's oxen, and causing them to be sold, for the payment of taxes assessed by said selectmen for the

purpose of building a school house. The defendants pleaded the general issue, and justification under a warrant to the collector, &c. The proof showed the defendants had been elected, but hàd not qualified. In deciding the question of liability, Upham, J. said: "The suit being against the selectmen for an illegal assessment, they must not only show jurisdiction, and a due assessment of the tax on their part, but that they were duly elected and qualified to act; in other words, that they are officers *de jure.*" "This rule (he continues) is qualified now in those instances *where third persons are interested,* where it is merely necessary to show an officer *de facto.*" "But the rule is correctly laid down in all the cases *where the individual sued is a party;* there he must be shown to be an officer *de jure.*"

The case of *Schlenker* v. *Risley* (3 *Scam. Ill. R.* 483) was an action for false imprisonment. Caton, J. said: "The general rule of law is, where an officer justifies an act complained of *purporting to be done in his official capacity,* that it is necessary that he should aver and prove in his defense not only that he was an acting officer, *but that he was an officer in truth, and right,* duly commissioned to act as such; while as to all others, it is sufficient to aver and prove that he was acting as such officer; and the reason of the rule is, that the officer himself is bound to know whether he is legally an officer, and if he attempts to execute the duties of an office without authority, he acts at his peril. *Whereas it is sufficient, so far as the right of third persons or the public are concerned,* that the officer is acting in his official capacity, under color of title." In *Burke* v. *Elliott,* (4 *Iredell's N. C. Rep.* 355,) Ruffin, J. laid down the rule of law thus: "The acts of an officer *de facto* are good, *except, in an action against himself; as to such acts as he undertakes to do as an officer.*" The case of *Riddle* v. *The County of Bedford* (7 *Serg. & R.* 386) was an action brought by a county treasurer to recover his fees. Duncan, judge, who delivered the opinion, said: "There are many acts done by an officer

de facto that are valid. They are good as to strangers, and as to all those persons who are not bound to look further than the person in the actual exercise of an office; *but here the officer is the actual party to the action;* the distinction is sound." The officer had not proved his title to the office *de jure,* and it was held he could not recover. *Luffborough* v. *Parker,* (16 *Serg. & Rawle,* 351,) in the same state, was an action of ejectment. The defendants set up title in themselves, derived from a tax sale of the lands, and traced the title back to an assessment *made by the defendant as an assessor,* under which the sale took place. The defendant did not show that he had been sworn as an assessor. Gibson, judge, who delivered the opinion, said: "I am not going to wade through the learning, as to the competency of acts of an officer *de facto,* but I will take occasion to say here, that I have not the least doubt that as respects third persons, the acts of the assessor would be valid if he in fact had never been sworn." That however is not this case, and it was held that being a *party* he must show himself to have been an officer *de jure.*

In *Keyser* v. *M'Kissam,* (2 *Rawle,* 139,) Rodgers, judge, laid down the law thus: "The acts of public officers de facto, coming in by color of title, are good so far as respects the public, *but void when for their own benefit.*"

In *Cornish* v. *Young* (1 *Ash.* 155) the question arose upon certiorari. It was held as follows: "The judicial acts of an alderman de facto, holding and exercising the office, can only be examined *in a proceeding in which he is a party, and can be heard.*"

The case of *Cumming* v. *Clark et al.* (15 *Verm. Rep.* 653) was an action of trespass for taking a cow. The defendant justified under a warrant to collect a highway tax. The officer (surveyor) had been appointed to fill the office, *for the reason that the incumbent had refused to act.* Redfield, judge, said: "The refusal to act, is *not ipso facto vacating an office.* There is nobody to exercise a judicial discretion

on that subject, to declare the office vacant." "It is said (he continues) that the surveyor was an officer de facto, and therefore his acts are valid. This may be true so far as third persons are concerned, but not when the officer himself, or those under whose authority he is put in motion, are called upon to justify his proceeding. They must show his right to exercise the functions of the office." In the case of *Plymouth* v. *Painter*, (17 *Conn. Rep.* 589,) Storrs, judge, said : "The title of an officer *de facto* cannot be indirectly called in question in a suit to which *he is not a party ;*" and he adds, at page 593, "although in a suit against a person for acts which he would have authority to do only as an *officer*, he must, in order to make out a justification, show that he is an officer *de jure*, because the *title* to the office being directly drawn in question, in a suit to which he is a party, may be regularly decided, so when he sues for fees, or sets up title to property, by virtue of his office, he must show himself to be an officer *de jure*" The case of *Fowler* v. *Beebe* (9 *Mass. Rep.* 231) we have already reviewed, showing that it recognizes and holds to the same distinction in the rule between actions directly against the party for his acts, and actions where only the public or third persons are concerned, as is found in all the cases from the other states. But while we have cited the cases, showing an entire uniformity of legal holding of the courts in the adjoining states, we have a remarkable concurrence in the adjudications of the courts of this state, on this point. (*Green* v. *Burke*, 23 *Wend.* 502, 503. *People* v. *White*, 24 *id.* 539, *per Walworth, chancellor,* and *Id.* 565, *per Root, senator.*) In the well considered case of *Savacool* v. *Boughton*, (5 *Wend.* 180, 181,) Marcy, judge, after the most thorough examination of the cases bearing on this point, says that where the inferior body either has no jurisdiction of the subject matter, or of the person, neither the court nor the party who procured the proceedings can derive any protection from them, when sued by a party aggrieved ; and that a ministerial officer who executes process on the face of

which it appears that the court had not jurisdiction, would be liable. In the case of *The People* v. *Hopson* (1 *Denio*, 579) there had been an attempt to show that the constable who executed the process had never taken the oath of office, nor given security. Bronson, judge, says : "this would be proper evidence, if the constable, instead of the people, was the party ;" and after citing with approbation the cases in this state above referred to, he concludes : "When one man attempts to exercise dominion over the person or property of another, it becomes him to see that he has an unquestionable title." "And clearly (he says) he cannot recover fees or set up any right of property on the ground that he is an officer de facto, unless he be also an officer de jure." So in *Bentley* v. *Phelps*, (27 *Barb.* 527,) Smith, judge, recognizes the same distinction. He says : "An officer de facto can do no valid acts except as to third persons. The office, as is said in *Riddle* v. *Bedford County*, (7 *Serg. & Rawle*, 386,) is void as to the officer, but is valid as to strangers. The officer cannot protect himself except possibly in some few cases of ministerial officers. (*See also Baker* v. *Freeman*, 9 *Wend.* 42 ; *Benjamin* v. *Hull*, 17 *id.* 439, 440, *in point*.) Nor is this new doctrine : as long ago as the day of Lord Hardwicke, in the English courts, this was acknowledged law. In the case of *Smith* v. *De Bouchin et al.*, (2 *Strange*, 994,) the vice chancellor of the University of Oxford had issued a warrant to arrest the plaintiff upon a complaint, without a sufficient affidavit in that regard, to confer jurisdiction ; upon which the plaintiff was arrested and imprisoned. The warrant was fair on its face. The plaintiff sued the vice chancellor, the officer making the arrest, and the jailer, *jointly*. They put in a *joint* justification. Lord Hardwicke was of opinion that the action of false imprisonment lay against the *vice chancellor*. That the other officers being *ministerial officers*, might have been excused, if they had justified *separately*, but that by *joining* with the vice chancellor they forfeited their justification, and judgment was given against the

Colton *v.* Beardsley.

whole. This case is cited with approbation in *Pekin* v *Proctor*, (2 *Wils.* 383,) decided in 1768, and the court add these sensible remarks : " Although it may be thought hard to adjudge a man a trespasser in a case heretofore doubtful, yet the law cannot bend to particular cases ; and it is more for the general utility to suffer particular hard cases than to give usurped authority any effect at all. The hardship of particular cases is thereby most amply compensated to the public."

If then, upon authority, the court correctly decided that the defendants *being directly parties, and being sued as officers for an act done as such,* were bound to prove themselves officers *de jure,* then the other rulings in the case are unimportant, as no point is made or claimed that they were proved to be officers *de jure ;* nor was there any offer to prove them such. It was not contended, or insisted, upon the trial, nor was the judge asked to charge, or decide, that they were officers *de jure ;* nor to submit to the jury the question whether the defendants were officers *de jure,* and it should not now be decided upon a point not raised or discussed upon the trial, nor excepted to. The argument of my learned brothers, to this effect, to prove the defendants were officers de jure, is upon no point raised, or exception taken, in the case. No new trial can be had for that reason, if this argument is sound in that particular, even if we *could* now enter upon that field of speculation. It was not claimed on the trial that these trustees are such de jure. The plaintiff himself, it was shown by the records, had been elected a trustee for a term of three years ; he accepted the office, and had entered upon the performance of the duties of his office, and had acted. He had never resigned ; true, he did not act ; for what reason does not appear. That neglect or refusal did not vacate the office. (15 *Verm. Rep.* 653.) If he refused, it subjected him to a penalty, but could work no injury to the district ; the other two could notify him and then act without him. There is a penalty for refusing to *accept,* when

elected. This refusal also subjects to a penalty; besides, it creates a vacancy. This was the case in *Randall* v. *Smith*, (1 *Denio*, 221.) Refusal to act after acceptance is a different thing. In the language of Redfield, judge, in *Cummings* v. *Clark*, (15 *Verm. Rep.* 653,) the refusal to act is not ipso facto vacating an office. There is nobody to exercise a judicial discretion to declare the office vacant. The defendants offered to prove they were acting as officers *de facto*, which was overruled, and excepted to. Afterwards in the course of the trial, they were permitted to prove this, and did prove it. If this was an error at first, it was subsequently cured. But if they had not afterwards been permitted to prove this, I can see no error in refusing to allow them to prove that which, if proved, the court correctly held would not constitute a defense, so it depends upon the legal ruling upon the main question in which this question is merged, whether this was right or wrong.

It is also argued, though the question does not arise in this case, that the title to an office cannot be determined in a collateral way. The proposition is true, if that is the *only* thing to be determined; but is not so to the extent claimed, upon the trial of such an issue as this. In all the cases above cited, it *was* so tried, and they all contradict that position. It is not necessary to discuss that question. Upon the defendants' theory they had no right to do the act, but by proving their *title de facto*. If they may prove this kind of *title* to an office in defense, may not the plaintiffs disprove it? What is the difference? In either case, of title *de facto*, or *de jure, it is the trial of title ;* and is as easily proved or disproved in case of title *de jure* as in title *de facto*—as well in one case as in the other; and has been so admitted, and tried, in a hundred reported cases, and in most of those above cited. Although there are dicta to the contrary, there are no adjudged cases upon that point so conclusively settled otherwise.

Colton *v.* Beardsley.

There is another question in the case, decided by the judge at the circuit, and excepted to, in which I think the ruling was error. It was held that the consent or certificate of the supervisor was a jurisdictional fact, and should have been obtained prior to the district meeting at which the appropriation to build the school house was voted. Such was the construction which had been given to the statute by the state superintendent of schools, and published in the "code of public instruction," and which holding was adopted by the judge in the haste of the circuit. I think, however, *Benjamin* v. *Hull* (17 *Wend.* 437) decides this the other way, and is authority to be followed. My learned brothers are undoubtedly right in their view of the law on this point. The trustees have no right or power to build upon a new site without the supervisor's authority; but I am satified such authority need not precede the vote. The question, however, upon this point of the case is entirely immaterial. If the other point was correctly decided, a new trial upon this point would be of no avail. The judgment must and would have been the same if the judge had decided this point the other way. It cannot therefore alter the matter. The case was all out, and if the judge had ruled this question the other way, the same judgment would have been directed. It was, therefore, and is, immaterial. A new trial upon that point would be useless.

Having come to the conclusion that the defendants did not justify their acts, they must fail. They made no preparation to prove themselves officers *de jure,* nor offer to prove any thing that was not proved. Both parties adopted the same law, and the same facts, as their full case; one that it was sufficient to show the defendants officers *de facto,* the other that it was insufficient. No other theory was claimed or discussed on the trial. The judge did not pass upon any other. No other should now be attempted to be spelled out or inferred. It would not help the defendants to order a new

trial upon the ruling as to the supervisor's certificate. This is a *case.* If the judge was right on the main question, as I think he was, the judgment should be affirmed.

New trial granted.

[WARREN GENERAL TERM, July 10, 1860. *James, Rosekrans* and *Potter,* Justices.]