### Wilcox vs. Smith.

A *constable* is justified in executing process regular on its face, although the officer issuing such process be but an officer *de facto.*

Evidence establishing the fact that the officer issuing the process is an officer *de facto*, is not *merely prima facie* that he is an officer *de jure;* it is *conclusive* for the protection of a ministerial officer required to execute such process.

To constitute a person an officer *de facto*, a mere claim to be a public officer and exercising the duties of the office are not sufficient; there must be some colour of right to the office, or an acquiescence on the part of the public for such a length of time as will authorize the presumption of at least a colourable election or appointment.

ERROR from the Orleans common pleas. Smith sued Wilcox in an action of trespass *de bonis asportatis.* Wilcox justified the taking as a *constable*, by virtue of an execution tested in June, 1826, issued by Justus Ingersoll as a justice of the peace of the town of Shelby in the county of Orleans, upon a judgment rendered by him against Smith. It was admitted that the execution on its face was strictly regular. Ingersoll was reputed a justice of the peace of the town of Shelby, and acted as such for three years preceding the trial in the common pleas, which was in February, 1827. The town of Shelby formerly belonged to the county of Genesee. In April, 1825, that town and seven other towns were erected into a separate county called Orleans, and after the organization of such county, Ingersoll continued to act as a justice of the peace until after the first day of December, 1826. The plaintiff proved that in May, 1825, the judges and supervisors of Orleans made an appointment of four justices of the peace for the town of Shelby, and that Ingersoll was not one of the number. This evidence was objected to, but admitted. The defendant offered in evidence a certificate of the clerk of Genesee, that on the 8th March, 1823, Ingersoll was duly sworn into office as a justice of the peace of the county of Genesee, which was refused to be received as evidence by the court, who charged the jury that the evidence that Ingersoll was a justice of the peace was

*prima facie* sufficient only, and might be rebutted; and that inasmuch as it had been shewn that he had not been appointed a justice of the peace of Orleans county, he was not a legal justice of that county, and the process issued by him was void and did not protect the constable. The defendant excepted, and the jury found a verdict for the plaintiff, on which judgment was entered.

*Greene C. Bronson,* (attorney general,) for the plaintiff in error. Ingersoll being a justice of the peace *de facto,* and the process being regular on its face, the officer was justified in executing it. 7 *Johns. R.* 549. If Ingersoll acted by virtue of an appointment made whilst the town of Shelby composed part of the county of Genesee, and the term for which he was appointed had not expired, he was an officer *de jure,* the dismemberment of that town from Genesee not affecting his appointment; 6 *Cowen,* 642; 9 *id.* 640; and that he had been duly appointed, might well be presumed from the length of time that he acted as an officer, as well before as after the county of Orleans was created, and those acts acquiesced in by the public. In *Fowler* v. *Bebee,* 9 *Mass. R.* 231, it was held that the acts of an officer *de facto* were valid as to third persons, and that the title of the officer could not be collaterally inquired into; though on an information against the officer himself to try the title by which he held his office, it was subsequently held that the inquiry was proper. 10 *Mass. R.* 290.

*C. P. Kirkland,* for defendant in error. The evidence to shew Ingersoll a justice was at most but *prima facie,* and as such might be rebutted. It was rebutted, which made it incumbent on the defrndant to have given the best evidence in his power, viz. the appointment of Ingersoll, if in fact such appointment was ever made. *Prima facie* evidence like that given in this case may be rebutted and effectually repelled by proof that the officer *de facto* is not an officer *de jure.* 3 *Campbell,* 432.

*By the Court*, SUTHERLAND, J. The principle is well settled, that the acts of officers *de facto* are as valid and effectual when they concern the public or the rights of third persons, as though they were officers *de jure*. The affairs of society could not be carried on upon any other principle.

In *The People* v. *Collins*, 7 *Johns. R.* 549, the town clerk of Turin refused to record the survey of a road, because one of the commissioners who signed the survey had not taken the oath of office and filed it with the clerk, as was required by law. The court held that the clerk, a mere ministerial officer, had no right to inquire into the authority of the commissioners and to adjudge their acts to be void; that, acting as commissioners under colour of an election, their acts were valid, and their title could not be inquired into collaterally. In *M'Instry* v. *Tanner*, 9 *Johns. R.* 125 upon certiorari, it was contended that the judgment was void, on the ground that the justice who rendered it was a minister of the gospel, and incapacitated by the constitution from holding any office. The court held that the title of the magistrate could not be drawn in question in this manner; that they were to intend that he acted under a regular commission, and being an officer *de facto*, his acts in relation to the public and third persons were valid. *Vid. also Potter* v. *Luther*, 3 *Johns. Rep.* 486. *Reed* v. *Gillet*, 12 *id.* 296. 4 *T. R.* 366. 16 *Viner*, 114. 2 *Campb.* 131.

In *Fowler* v. *Bebee and another*, 9 *Mass. R.* 231, the defendant pleaded in abatement that the sheriff whose deputy served the writ was not sheriff *de jure*, he having been appointed and commissioned some months before the law erecting the county for which he was appointed, by its own terms, went into operation. The plea was overruled on the ground that, being sheriff *de facto*, his acts and those of his deputies were valid as to third persons, and that his title to the office could not be collaterally tried. An information was subsequently filed against the officers of this county by the solicitor general, and their appointments were decided by the court to have been made without constitutional and legal authority. 10 *Mass. R.* 290.

VOL. V.                    30

UTICA,
July, 1830.

Wilcox
v.
Smith.

It will be observed that these cases do not go upon the ground that the claim by an individual to be a public officer, and his acting as such, is merely *prima facie* evidence that he is an officer *de jure;* but the principle they establish is this : that an individual coming into office by colour of an election or appointment, is an officer *de facto,* and his acts in relation to the public or third persons are valid *until he is removed,* although it be conceded that his election or appointment was illegal. His title shall not be inquired into. The mere claim to be a public officer, and the performance of a single or even a number of acts in that character, would not perhaps constitute an individual an officer *de facto.* There must be some colour of an election or appointment, or an exercise of the office, and an acquiescence on the part of the public for a length of time which would afford a strong presumption of at least a colourable election or appointment.

Independently of the certificate of the clerk of the county of Genesee, (which I think was properly exclued by the court below,) there is no direct evidence that Justus Ingersoll came into office under colour of an election; but it is shewn that he was an acting justice of the town of Shelby, in the county of Genesee, for at least *two years* before the county of Orleans was erected, in April, 1825; and that he continued to act as such justice in the same town, after it became a part of Orleans county, down to December, 1826. This evidence warrants the presumption that he was elected a justice while his town was a part of the county of Genesee, and that he continued to act by virtue of that authority in the county of Orleans; and it has been judicially determined, that the transfer of a town from one county to another does not terminate or affect the offices or powers of its magistrates. 6 *Cowen,* 642. 9 *Cowen,* 640. The proof on the part of the plaintiff, therefore, that Ingersoll had never been appointed a justice of the county of Orleans since its organization, did not, when taken in connection with the other evidence in the case, impeach his title to the office, or rebut the *prima facie* evidence, if it is to be considered but *prima facie,* which had been given by the defendant.

The case of *Rex* v. *Verelet*, 3 *Campb*. 432, depends upon a different principle. That was an indictment against the defendant for purjury, alleged to have been committed in an oath taken before Samuel Parson, surrogate of the bishop of London. The indictment, averred that the said *Samuel Parson* had competent authority to administer the oath. It was held by Lord Ellenborough that his having acted as surrogate was *prima facie* evidence that he was duly appointed and had competent authority to administer the oath, on the general presumption of law that a person acting in a public capacity is duly authorized to do so; but he held that the presumption might be rebutted by showing that in fact he had never been legally appointed, and that such proof would negative the allegation that he had competent authority to administer the oath. Here the act of the officer was made the foundation of an affirmative criminal proceeding, instead of being used as a defence or protection; and it may well be that his strict legal title to his office under such circumstances may be inquired into; 1 *Hawk. P. C.*, ch. 69, § 4; but if an officer had been prosecuted as a trespasser for an act done under a precept or warrant issued by the surrogate, I apprehend an inquiry into the title of the surrogate to his office, after an unquestioned exercise of its powers for twenty years, would not have been permitted. The court below therefore erred, and the judgment must be reversed.