## HUTCHINGS *versus* VAN BOKKELEN.

From the Act, giving the writ *de homine replegiando,* it is inferrable that one person may be entitled to the custody of another, although without a civil or criminal process.

Thus, a deserter from the army of the United States may be arrested and confined for trial by his appropriate officers, without warrant.

It is no infraction of the deserter's rights, that the county jail is used, as the place of his confinement.

Such confinement for the space of ten days is not unjustifiable, unless it appear that a court martial could have been convened for his trial within that period.

For an act, affecting another's rights, and done by a person under claim of authority as a public officer, the authority may be established by proof that such person had, on other occasions, acted as such public officer.

This mode of proof may be adopted by the party, who exercised the authority, even in a suit against him for so doing.

ON REPORT from *Nisi Prius,* TENNEY, J. presiding.

REPLEVIN of the person.

Brief statement, *that* the plaintiff was an enlisted soldier in the army of the United States; *that* he deserted before the term of his enlistment had expired; and *that* the defendant, as a recruiting officer of the army, arrested and held him in custody.

It was in proof for the plaintiff that he was confined by order of the defendant in the county jail, ten days until taken out upon this writ.

For the defendant, witnesses testified that they had seen the plaintiff in the military service of the United States, and that he had several times recently admitted himself to be an enlisted soldier and a deserter.

The defendant introduced the following documentary evidence: —

1. A paper purporting to be an enlistment for five years by the plaintiff in 1839, certified as having been subscribed and sworn to by him before A. J. Brown, justice of the peace, it being admitted that Brown would testify to its truth; but it is denied that the plaintiff is the person who signed it. This document also contained an allegation signed by J. B. Hill,

Acting Lieutenant, as to the description of the plaintiff's person, and that he was sober, when he enlisted.

2. A copy of the defendant's commission as a brevet second lieutenant in the United States service, attested by the Adjutant General.

3. Extracts from the army roll of the United States. These extracts contained statements of the plaintiff's enlistment in 1839 for five years; of his desertion in 1840; of his joining in October, 1841, from desertion, and being put in confinement; of his wages being paid up to December 31, 1839, and of his second desertion in December, 1841.

The defendant also proved by oral testimony, that he was acting as a lieutenant in the service of the United States, at the time of the plaintiff's arrest and confinement in the county jail.

He also proved that said Hill, at the time of the enlistment, was an acting lieutenant and recruiting officer, and that his signature is genuine. All the foregoing proofs, documentary and oral, were seasonably objected to.

The case was then submitted to the Court with power to draw inferences of facts.

*A. W. Paine,* for plaintiff.

1. We contend, that the process will lie because the defendant, as an officer, had no right to imprison a soldier *in the county jail.* No such power is given by statute, and the assumption of it is a high handed violation of the citizen's rights. To be seized upon suspicion, and thrown into the cell with felons, without warrant, and that too by an officer unknown to our State laws, is an aggression which the law demands to be rebuked. Even the case of persons convicted of crimes, under the laws of the United States, cannot be imprisoned in our common jails, except by virtue of the statute providing for the case. U. S. Stat. March 3, 1825, § 15; Gordon's Dig. 1108.

2. We object for the reason, that here was no warrant or other process, authorizing the arrest and imprisonment. This

is the express case, provided in the Act regulating this process. R. S. chap. 142, § 1.

It is a plain infraction of the right provided for in the, Constitution of Maine, Art. 1, § 5, and Constitution of U. S. Art. 5 of Amendments ; 2 Kent's Com. 32 and note.

*Desertion* is a crime ; in war a capital one, and at all times followed by most severe punishment, in addition to which is inflicted the penalty of serving out the time of his enlistment. Gordon's Dig. 1025, 1010.

Every one, charged as a deserter, must be tried on warrant before he can be imprisoned.   Gordon's Dig. 1100.

The power of arresting and depriving a person of his liberty, without legal process, is averse to our system of government ; and any infraction of personal liberty is watched with jealousy.

The right of courts to punish for *contempts* can only be exercised on *view* of the offence, by a judicial authority, having the power from the State, and this, too, carried into effect by a warrant from the bench.

The *fugitive from service* can only be taken upon a warrant issued upon a hearing before a competent tribunal established for the purpose.

The *fugitive from justice* is, too, protected against an unwarrantable seizure of his person.

*Rioters* and *unlawful assemblies* may be dispersed only by high civil officers, and arrests made only so far as necessary to quell the disturbance and held only until proper warrants may be issued.   And even this power is only given in consideration of the necessity of prompt and immediate action.

*Criminals* may be arrested by *officers* on strong suspicion, but can only be detained until a warrant may be issued by competent authority.

If asked what course should the defendant pursue ?   I answer, if there is no course under the " fugitive from service" or " fugitive from justice" Acts, or some other, then it is a *casus omissus ;* one not provided for, and the military man, who seeks to seize upon a supposed deserter, is in the same con-

dition that the slaveholder was before the Act was passed for his relief, when he found his human chattels in a free State, or in the condition that the loser by theft was, when the thief was escaped into another State or country, before the Acts and treaties were in force for the reclamation of such fugitives. That the law does not allow the exercise of a power, is a poor excuse for exercising it.

3. If any right to arrest ever existed, the imprisonment was too long protracted.

4. No legal proof of defendant's being qualified for any command or to exercise any power as an officer.   He must be sworn.   Of this there can be no doubt.   The copy of his commission is certainly inadmissible, and no proof of the oath is pretended.   The only question which arises is, whether he could be proved a duly qualified officer by evidence of his acting as such.

Where questions arise collaterally in a case, involving the due exercise of an official authority, proof of such officer acting in the capacity claimed, with a general recognition of his acts, is evidence admissible to prove such office.   But there must be such an acting as implies or presupposes a public assent to, or recognition of the capacity in which he acts, and the proof can only be offered when the question arises collaterally either to the party or to the cause.   When, however, the right to exercise the office is the precise question at issue, the party justifying, as such officer, must prove his right.   *Cottrill* v. *Myrick*, 3 Fairf. 234; *Fowler* v. *Bebee*, 9 Mass. 235.

This doctrine is recognized throughout the cases, as in *Doty* v. *Gorham*, 5 Pick. 489; *Nason* v. *Dillingham*, 15 Mass. 171; *Bucknam* v. *Ruggles*, 15 Mass. 182.

The rule admitting such testimony of holding office is *only* applicable where the *general convenience* requires.   Where the question arises collaterally, it is not expected that third parties have the power to prove the authority.   1 Greenl. on Ev. sect. 83.

But the reason does not apply, where the party justifying is

on trial himself. Especially when his whole defence is based upon the legality of his office.

An important distinction, which serves to explain some apparent discrepancies in the application of the rule, exists between those officers connected with the Court, and those who may be said to act *in pais*. 3 Phil. on Ev., Hill's notes, 239.

In the latter case, proof of the office is required, whereas the Court, in the former, will take judicial knowledge of the fact of office.

5. No proof of plaintiff's identity with the person named in the enlistment. The enlistment is not proved. The paper offered in evidence on that point was inadmissible.

6. Plaintiff had a right to leave the service under the facts shown. *By stat. of U. S. March* 16, 1802, *sect.* 13, *vol.* 2, *page* 135, *enacted* — *The corps shall be paid in such manner that the arrears shall at no time exceed two months.* Gordon's Dig. No. 3473.

Same vol. page 362, Art. 20, proof of payment is a prerequisite before the party can be convicted of desertion and punished. Gordon's Dig. 3513. By the evidence introduced, it appears that he did not desert until July 4, 1840, and he had received pay only to Dec. 31, 1839. The enlistment is a contract, and its validity is no less strong against the United States than against an individual.

*J. & M. L. Appleton*, for the defendant.

The opinion of the Court, SHEPLEY, C. J., WELLS, RICE, and HATHAWAY, J. J., was drawn up by

WELLS, J. — The writ *de homine replegiando* lies in favor of a person unlawfully imprisoned. *Richardson* v. *Richardson*, 32 Maine, 560. The question presented is whether the plaintiff was unlawfully imprisoned.

The original writing signed and sworn to by the plaintiff, together with his confessions, show very clearly his enlistment in the army of the United States as a soldier. It also appears from his confessions and from the records of the war department, that he was a deserter. He was arrested by

the defendant, who caused him to be confined in the jail at Bangor. The first section of the Act authorizing this writ must be construed in reference to the whole Act, by which it appears, that one may be entitled to the custody of another, although that custody may not be derived from a civil or criminal process.

The provisions of the constitution of this State and of the United States, cited in argument, do not forbid the arrest of deserters from the army without warrants, nor were they intended to prevent the enactment of suitable and proper laws for its government.

By the Act of Congress of April 10, 1806, prescribing the rules and articles by which the armies of the United States shall be governed, it is provided, " Art. 78, non-commissioned officers and soldiers, charged with crimes, shall be confined, until tried by a court martial, or released by proper authority."

No warrant is required for their arrest, nor is the manner of confinement specified. The plaintiff having deserted was subject to confinement until he should be tried, and it was the duty of the defendant to cause him to be safely kept. There was no violation of law in confining him in the county jail. The jailor was under no obligations to receive him, but his consent to do so, furnishes no just ground of objection on the part of the plaintiff. Nor is it apparent that the place of confinement was improper, nor that the defendant departed from the line of his duty. There was probably no other convenient mode by which he could securely keep the plaintiff.

It is contended, that the imprisonment was too long. The Act before mentioned provides, " Art. 79, no officer or soldier, who shall be put in arrest, shall continue in confinement more than eight days, or until such time as a court martial can be assembled." The plaintiff was confined ten days before he was liberated by the present process, but it does not appear, that a court martial could be assembled within that period, and consequently the confinement did not exceed the bounds authorized by the law.

It is further contended, that there was no legal evidence of the authority of the defendant to make the arrest. His commission was not produced, but a copy of it from the records of the department of war was offered.

It is not necessary in the present case to decide whether such copy is admissible, for it was proved, that the defendant was an acting lieutenant in the service of the United States at the time he made the arrest. His authority could not be presumed from the mere act of arresting, but the testimony is understood as embracing other acts performed in that capacity.

When one has acted in the discharge of the duties of a public office, under color of a legal appointment, although his commission or appointment is not produced, his acts have been held valid between third persons. *Fowler* v. *Bebee & al.* 9 Mass. 231; *King* v. *Gordon,* 2 Leach's Crown Cases, 581; 3 Cruise's Dig. 159; *Doty* v. *Gorham,* 5 Pick. 487; *Bucknam* v. *Ruggles,* 15 Mass. 180; *Cottrill* v. *Myrick,* 3 Fairf. 222. And there are authorities, which decide, that generally where such officer is a party to the record and justifies under his authority, his official acts are *prima facie* evidence of it. *Potter* v. *Luther,* 3 Johns. 431; *Wilcox* v. *Smith,* 5 Wend. 231; *State* v. *Wilson,* 7 N. H. 543; 1 Greenl. Ev. sect. 83 and 92. It is not perceived, that any evil can arise from the adoption of this rule, for where there is cause to doubt his authority, when he is the party to the record, those who question it will be at liberty to show, that there is no legal ground for its exercise. The question presented in this case was not raised in *Cottrill* v. *Myrick,* and the order of proof, if the town clerks had been parties, was not investigated.

The evidence introduced must be deemed sufficient to show, that the defendant was a lieutenant *de facto,* and that he was duly qualified by taking the oath required by law. Such appointment and qualification may be presumed from the acts done, and this presumption will remain until it is removed by other evidence.

The objection, that the plaintiff had a right to desert be-
cause he had not received all the wages due to him, cannot
prevail.   The Act of Congress, before mentioned, provides
by Art. 20, that "all officers and soldiers, who have received
pay, or have been duly enlisted, in the service of the United
States, and shall be convicted of having deserted the same,
shall suffer death, or such other punishment as by sentence of
a court martial shall be inflicted."   This Act was so far modi-
fied by that of May 29, 1830, as to abolish the punishment
of death for desertion in time of peace.   The plaintiff having
enlisted and deserted was properly arrested for the purpose of
being tried; whether he should have been convicted, it is not
our province, but that of a court martial, having jurisdiction
of the offence, to decide.   By becoming a soldier, he has
subjected himself to the laws applicable to that condition, and
he must submit to the mode of administration, which they
have provided.

According to the agreement of the parties, the plaintiff
must become nonsuit, and the defendant have judgment for a
redelivery of the body of the plaintiff, to be disposed of agree-
ably to law.