IN THE

# COURT OF ERRORS AND APPEALS

OF THE STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### MARCH TERM, 1877.

---

CHRISTOPHER MEYER, appellant,

and

EZEKIEL M. PATTERSON, respondent.

1. A sheriff cannot appoint a special deputy, *pro hac vice*, by parol.

2. If a sale of land be made on foreclosure by a bailiff thus inform-
ally appointed, and the sheriff, in conformity thereto, executes a deed
to the purchaser, such deed will transfer the title, and will be good in
a collateral proceeding as the act of an officer *de facto*, but will be set
aside, on a direct application to the chancellor in the course of the
same proceeding.

3. A sheriff who makes sale of land by a bailiff, or special servant
duly appointed, can take the oath required by the thirteenth section
of the act relative to the sale of lands.

---

On appeal from decree of the vice-chancellor. The case
is reported *sub nom. Meyer* v. *Bishop,* 12 *C. E. Gr.* 141.

---

NOTE.—In *Den. Inskeep* v. *Lecony,* Coxe 111, 113, it was held, that
although an execution was so defective that, on a direct application, it
would have been deemed void, yet, after a sale, the sheriff might justify
under it. So, in *Campbell* v. *Dewick,* 5 *C. E. Gr.* 186, the legality of a
constable's election, &c., was presumed, and it was held to be unneces-
sary, in order to establish title to lands purchased at a tax sale con-
ducted by such constable, to prove that he was properly elected and
sworn, and that he gave bond.—REP.

*Mr. A. V. Schenck,* for the appellant.

*Mr. Keen,* for respondent.

THE CHIEF JUSTICE.

This appellant was the complainant in the court of chancery, the suit being for the foreclosure of a mortgage; and he was also the purchaser at the sale made by the sheriff in that proceeding, and for the premises thus sold he took a deed from that officer. In this posture of things the respondent, who was a defendant in the foreclosure bill, exhibited his petition to the chancellor, praying that this sale should be set aside for various reasons, and among these, on the ground that the sale had been conducted by a special deputy of the sheriff; such deputy not having been duly authorized. I agree with the vice-chancellor in deeming this specified objection the only one of such weight as to require judicial discussion.

The particular fault laid against the sale made under the execution is, that the bailiff or special deputy by whom it was conducted, had no written authority from the sheriff to justify his proceedings, but that his deputation was simply by parol. It is admitted that this sale took place in the absence of the sheriff, and by an agent, possessed of no official character, and who describes himself as the sheriff's assistant, by virtue of a verbal understanding, to take charge of his office and its business, and who testifies that he made the sale in question in consequence of an oral direction to make the sales and adjournments necessary on that day. In the court of chancery this sale was set aside, and it is to reverse this order that this appeal has been brought.

To sustain himself before this court, the appellant, in the first place, insists that even if an oral authority from the sheriff to an unofficial person to make sale under a *fieri facias* be invalid, still, that such act of the deputy must, on principles of policy, and as the act of a *de facto* officer, be held valid. But the principle thus referred to has no place

Meyer *v.* Patterson.

in the present inquiry. It can never have any proper appli-
cation unless in cases in which the endeavor is made to
assail, collaterally, the official act. I have no doubt, that
in the present case, this sale thus made by deputation, if the
court of chancery had not put its hand upon it, would have
transferred a legal title to the appellant, and that such would
have been its effect, although we assume that the authority
under which the deputy acted was invalid. Any other doc-
trine than this would be attended with many mischiefs, and
would introduce great risks to buyers, and much uncer-
tainty in titles derived through this medium. If estates
depending on foreclosure are subject to attack on the score·
that the sheriff's deputation to the person making sale was
not in all things in due form, or because it cannot be pro-
duced, or is alleged never to have existed, such estates have
not that solid foundation that has been heretofore supposed
to exist. A person who holds himself out as a sheriff's
deputy, clothed with the right to sell, under the writ of a
court, land or other property, assumes the function, not of
a private, but of a public office; and when it clearly
appears that the sheriff recognizes such assumption of
authority, by a ratification of the act done, or otherwise,
the public, and all persons taking part in the business, have
a right to accept such person for what he claims and is
admitted to be, without examining into the regularity of
his credentials. Such, certainly, has been the received doc-
trine in this state, for it may well be doubted whether any
counsel, after a sale has been made by the special deputy of
a sheriff, in examining the title so made, has ever deemed
it his duty to inspect the deputation under which such
bailiff acted. And this notion as to the conclusiveness of
the recognized act of the sheriff's agent is, I think, derived
from and founded in the learning of the books.

Chancellor Walworth, in *Boardman* v. *Halliday*, 10 *Paige*
233, very plainly intimates that he would regard the acts of
an agent of a sheriff, who was not vested with any actual
legal authority, as those of a deputy *de facto*, if it distinctly

" appeared that he was professedly acting as the deputy "
of the sheriff, and with his knowledge and consent.   The
reasons which give rise to the doctrine that the acts of one
who is apparently possessed of official power, apply with
full force to the case of those who act for the sheriff under
delegated authority.   These reasons are, that the public
and third persons cannot, in the nature of things, when sud-
denly called upon to act, stop to make inquiry into the title
of one who, on the surface, appears to be invested with the
franchise which he claims the right to exercise ;   common
justice and public policy demand that, thus situated, they
may take the appearance for the reality.   And this is the
posture of all the parties when a sale under an execution is
conducted by the bailiff of the sheriff; for an auction in that
mode is impracticable if the several bidders are required to
ascertain, at their peril, the regularity of the deputation of
him who makes the sale, and who has the execution in his
hands, and who thus publicly asserts himself in an official
capacity.   When it is conceded that the sheriff may appoint
these special deputies to exercise the functions to sell the
property and to arrest the body, it seems to follow, as a
necessary consequence, from legal principles, that the same
presumption will be made in favor of their acts which is
raised in favor of the acts of the officer whom they repre-
sent ; *pro hac vice* they stand in the stead of the sheriff in
every respect.   The general subject will be found to be dis-
cussed with fulness and learning in the following cases :
*State* v. *Carroll*, 38 *Conn.* 449 ;   *People* v. *Collins*, 7 *Johns.* 549;
*Potter* v. *Luther*, 3 *Johns.* 431 ;   *Wilcox* v. *Smith*, 5 *Wend.* 231.

But, as has been already said, the present case has no
affinity with those which are regulated by the doctrine that
the acts of *de facto* officers must, with respect to third per-
sons dealing with them, be deemed conclusive, where such
acts are, in a collateral way, drawn in question.   The validity
of the sale on this occasion is put to the test in a direct pro-
ceeding.   The petition filed in the court of chancery, put
before that court, in a suit then pending, the sale made

Meyer *v.* Patterson.

under its own process, and thus subjected that sale to its scrutiny; so that it was called upon to adjudge whether such process had been misused in any respect whatever. It is the common practice of a court of equity thus to supervise the conduct of its own officers, and to set aside sales made under its authority, both after as well as before the delivery of the sheriff's deed, if it is found that such conduct has been tainted by fraud or oppression, or has been signally marked with illegality. Where such supplemental proceedings are taken, the execution and all its consequents are suspended, and the sale which has taken place by virtue of such writ is to be deemed inchoate, and, for its consummation, to abide the decision of the chancellor. In legal estimation, the purchaser at judicial sales is presumed to be apprised of this authority of the court, and is therefore held to be aware that he takes his title subject to defeasance, in case the court shall find, upon the subject being brought to its notice, that the action of its officers has been improper or illegal. Chargeable with such knowledge, the claim now made for the appellant, that he had the right to conclusively regard the bailiff making the sale as vested with competent authority, is plainly inadmissible, because this would be to deny the superintendency of the court over the doings of its own servants; for the due qualification of the agent making the sale is as much a part of the legal questions involved in the transaction, as is the question whether there had been a proper advertisement of the sale, or whether the premises had been struck off to the highest bidder. Everything that entered as a legal constituent in the procedure of sale is subject to the corrective power of the court, and, when such power is called into action, nothing done in executing the *fieri facias* can stand unless it receives the sanction of the chancellor. The consequence is, therefore, that the precise question now to be determined is, whether the court of chancery did not do right in rejecting a sale made by a special bailiff, who, at best, was possessed of only a parol deputation.

The counsel for the appellant insists that an agency of that kind could, at common law, be created in this mode; but, after a careful examination of the books, I must reject this proposition. It is true that the rule is thus stated in Dalton in his work on sheriffs; but the authorities which he cites are, in some instances, not applicable, and while one of them may be said, in some measure, to support his position, another flatly contradicts it. The opposing authority is that of Lambard, in his Eirenarcha, a work that was published as early as 1581; and, in speaking of a warrant directed to a sheriff, this author says : " If it be directed to a sheriff, then he may command his bailiff, under-sheriff, or other sworn and known officer, to serve it, without making any precept; but if he will command another man (that is no such officer) to serve it, he must give him a written precept; for otherwise a writ of false imprisonment will lie for the arrest." This authority is expressed in terms so direct and explicit that it cannot be misunderstood. Dalton, in compiling his book, which is about a century later than that of his predecessor, has transcribed and interpolated the above quoted passage, and then adds to it the declaration, that " the sheriff may command his servant by word only (without any precept in writing) to serve or execute any process, and it is good." To warrant this assertion two authorities are cited, *Keilway* 86, and *Brook's Abridgment, tit. False Imprisonment* 43, and *tit. Trespass* 339; but, upon careful examination, it will appear that these authorities do not lay a sufficient foundation for a doctrine so impolitic and unreasonable as that propounded by this text writer. The note in Keilway contains sundry resolutions enounced by Frowike, chief justice, and in which it is stated that his companions agreed; and among these he is reported as saying, " that the sheriff may command his bailiff-errant (common bailiff) or his servant to arrest the party, without warrant made to them, because what the servant does is his own act and deed, and he has the authority of his 'writ;" but as we are not informed of the nature of the case pending, or what

was the issue before the court, it is impossible to say whether this remark was a mere dictum or has the weight of a judgment. But, regarding it in either light, it is difficult to perceive how much effect is to be given to it with respect to the present inquiry. We are compelled to believe that the resolution referred to the case before the court, and it may well be that, in its application to that case, the resolution was entirely correct. Under certain circumstances it is not to be denied that the sheriff can order, by parol, his special bailiff to execute a writ; he can do this when he himself is personally aiding in its execution; and so, in some cases known to the ancient practice, he could take this course when sitting in his judicial capacity. See *Gilbert's Law of Replevin,* p. 69. That the expression above quoted from Keilway had reference to the power of a sheriff when acting as a judge, is rendered somewhat probable from the fact that we find in the *Year Books* [*9th ed.*] 4–48, a similar statement, " that the sheriff need not award his precept to his bailiff in writing, but it sufficed if he did it by parol," as this latter case was plainly a case arising from a judicial act done by the sheriff; and yet this case also has been cited as an authority for the general power of this officer to make parol deputations. With regard to the two references made to *Brook's Abridgment,* a perusal of the cases cited by that writer from the *Year Books,* will make it plainly manifest that there is nothing in them that can be said to shed any light upon the subject now under review.

Such loose sayings as these above mentioned are hardly useful for any purpose, and can afford no reasonable ground for raising up so important a rule that a sheriff can turn over all his important duties in the execution of writs by mere unwritten words. And when we remember that in the great number of questions which have arisen and are discussed in the books, with respect to the execution of writs by deputies, and with respect to the proofs requisite to show that they had authority to represent the sheriff, no judgment has gone on the ground of an oral delegation of

power, it would seem that we are constrained to believe that no such power existed in this class of officers.  It is incredible that such a practice could have prevailed from the earliest records of the English law down to the present time, without presenting itself in some tangible form.  It is not mentioned in any of the books of practice, so far as I have discovered; nor in *Comyn's Digest*, nor in *Bacon's Abridgment*, though the writers of these books severally treat of the subject of the transfer of authority to the bailiff by the sheriff, and although the author of the latter work cites the case from *Keilway*.  In 9 *Rep.* 51, it is stated broadly that a deputy ought to be made by writing.  Nor is the doctrine contended for by the appellant reconcilable with that well settled rule of the common law, which can be found repeated again and again in the *Year Books*, that on the demand of the defendant, a special bailiff must show his authority before he can take the body into custody; for it would not seem that such rule could be complied with by the production of a writ which, upon its face, would show, not that such bailiff, but somebody else, had the right to make the arrest.  My conclusion, from the examination which I have given this subject, is, that it cannot be stated, as a general rule, that at common law the sheriff could authorize, without writing, a special deputy to execute any writ coming from the courts into his hands.

But if my deduction on this subject from the ancient books had been the reverse of what it is, it would not, with me, have affected the result in this case, for, I think, whatever may be the state of the law elsewhere, the rule with us has been too long settled in practice for it to be called in question at this late day.  Every gentleman of the profession knows that it has been the usual course for sheriffs to appoint their special deputies by writing, and that it has never been supposed that a man could be required to pay his money, or render himself into custody, to one who could show no claim to such submission, except that he was in possession of a writ which conferred upon him no authority,

and which was addressed to another person. Our entire statute law, as well as the practice of our courts, has grown up under a different theory. Until this case was placed before my attention, I had never known of any delegation of authority by a sheriff, with respect to the service of process, that was not in writing, although such delegations are of constant occurrence, and such practice is far too ancient and too beneficial to be thrown into doubt, or in any wise disturbed. Nor do I perceive any reason why sales of lands should not be conducted in the old mode, under existing laws, by special deputies appointed in writing, as the occasion may require, for there is no indication in the written law, that I can discover, that appears to show that the sheriff must execute, in his own person, the writ of execution. The execution of writs by the hands of agents has been the established method long used in this state, having been derived, with the rest of our legal system, from the common law, and cannot be now uprooted unless by the force of legislation.

In *Allen* v. *Smith*, 7 *Hal.* 163, Chief Justice Ewing says : " The authority of the sheriff to execute a writ by a deputy appointed for the occasion, is founded on the common law, abrogated by no statute, long practised in this state, repeatedly sanctioned, and productive of great convenience in the administration of justice." Such bailiffs have always exercised, to their full capacity, all the powers of the sheriff over the business thus confided to them. The act making lands liable to sale for the payment of debts was passed in 1799 (*Pat. Laws*, 369), and it is in this law that the sheriff is empowered to exercise, within prescribed limits, a discretionary power to adjourn his sales ; and from that time to this, his special agents, duly appointed in writing, have, without question, exercised this power. Nor do I think that the act recently passed, requiring the sheriff and certain other officers selling lands, to take the oath, to which is given a certain evidential force with respect to the validity of the transaction, should be construed as having the effect

of depriving the sheriff of the privilege of acting by his special servants in the particular in question. I find no incongruity between the bailiff conducting the sale and the sheriff taking this oath; he can swear to all the facts necessary to be incorporated in it, from information derived from sources which he deems trustworthy; and the idea that he must have actual knowledge from personal oversight and observation, is entirely repelled by the circumstance of his being required to depose that the land was sold by virtue of " a good and subsisting execution," which is manifestly a mere question of law. In my opinion, this statute has not in any wise affected the ability of the sheriff to execute the process of the courts by vicarious authority.

From the foregoing resolutions, it will be readily perceived that I am led to the conclusion that the decree appealed from should be affirmed. The sale in question was not made by a person duly delegated, and was, therefore, clearly illegal; and as its illegality was directly, and in the progress of the cause in which it had occurred, brought to the attention and under the judgment of the court, its rejection became a legal necessity.

I shall vote to affirm the decree, with costs.

Decree unanimously affirmed.