Earl, J.
I concur in the result reached by Judge Miller, and favor a reversal of the judgment upon three grounds.
1. It was necessary for the people to show that the oath alleged to be false was taken before either a de jure or a de facto notary. The only proof given was *202 that Melick, who administered the oath, had acted as a notary for some years. This was prima facie evidence that he was a de jure notary. The defendant had the right to meet this prima facie case by any evidence tending to show that he was not de jure a notary, and the evidence, offered to show that Melick, at the time of his alleged appointment, and subsequently to the time he administered the oath, was a resident of New Jersey, had such tendency. If true, it would have shown that he was a person who could not have been legally appointed, and hence would have destroyed the presumption that he had actually been appointed. There could be no presumption that the governor appointed one to the office of notary whom he had no legal right to appoint. If this evidence had, therefore, been received and uncontradicted, it would have been necessary then for the people to show that Melick was a notary de facto. This could not have been shown by evidence that he had merely acted as such. The de facto character of officers is never established by simple proof that they have acted as such. In addition to such proof, it must be shown that they had color of office, or some semblance of competent authority. This is generally shown by proof of some election or appointment, formal, but irregular or defective, under which the officer has assumed to act. I am not, however, prepared to deny that an officer may have sufficient color, in some cases, without any appointment or election whatever ; as when he takes possession of the public building or room where the duties are to be discharged, and has possession of the public property pertaining to the office, and is thus clothed with all the indicia of official position, and has for a considerable time, with the acquiescence of the public, ■ and without dispute, openly and notoriously exercised the duties of. the office. Such a case could rarely, if ever, occur in *203 this country ; but if it should • occur, it might give color of office. To illustrate more clearly my meaning : if one should take possession of a county clerk’s office, claiming to be clerk, and should there act as clerk for a considerable time, by the general acquiescence of the public, there being no one else to exercise the duties of the office, he might have sufficient color of office to make him clerk de facto. But a notary public, having-no public office, clothed with none of the symbols or outward tokens of official position, being one of thousands who may, anywhere in the same county, exercise the duties of the same office, can not get color of office by simply acting from time to time as he might have opportunity. He can get color of office only by an appointment, emanating from the appointing power, or from some power having, at least, a colorable right to make the appointment. If the governor should commission him, without confirmation by the Senate, or while he was a non-resident, and he should then act, he would be in office under color of appointment, and thus become a notary de facto. These views are abundantly sustained by the authorities in this State (People v. Collins, 7 Johns. 549 ; Wilcox v. Smith, 5 Wend. 231; Ring v. Grout, 7 Id. 341; People v. White, 24 Id. 520 ; Hamlin v. Dingman, 5 Lans. 61; People v. Cook, 14 Barb. 259 ; S. C., 8 N. Y. 67). There was, therefore, error in the exclusion of the evidence as to the residence of the notary.
2. For reasons stated fully by Judge Milleb, there was error in the admission of the evidence of the witness McCall as to the declarations of Beid.
3. It is conceded that there could be no conviction under this indictment, if the words “ according to the best of their information, knowledge and belief,” applied to the whole affidavit. I think they do so apply, and concur generally with what Judge Milleb says upon this point. The question is not how the affi *204 davit may be made to read, by a critical and strictly grammatical construction, but how it would be commonly understood. We are to construe this as we think mankind generally would understand it. Such qualifying words in brief affidavits are usually put at the end, and are usually intended to qualify the whole affidavit. So far as I can perceive, there was just as much reason for qualifying the whole as the part immediately preceding the qualifying words. But if the legal construction of this affidavit is in doubt, the prisoner is entitled to the benefit of such doubt. It is a humane principle of the law that a prisoner shall have the benefit, not only of doubts upon the facts but doubts also upon the law.
I concur, therefore, in the reversal of the judgment.
Hand, J.
I agree in the result of Judge Miller’s opinion, that there should be reversal of conviction and new trial in this case. I cannot, however, concur in all the grounds stated by him ; and as the fate of any new trial may be dependent upon some of them, it is proper that the views of the court should be expressed upon these questions.
1. I think the language of the affidavit, in its proper and natural construction, and according to grammatical rules, is a positive affirmation as to the prisoner being an officer of the company, and the “above named assets” being the absolute property of the company. Of course this does not, in the least degree, prevent an acquittal of the prisoner, if the jury find that-he did not intend, in fact, to swear positively, but only upon information and belief as to these matters. Hence the observations of the opinion as to harsh consequences from such a construction I do not think just or well founded.
The question presented here really is, whether the *205 proof of the making of that affidavit was admissible at all, as within the indictment charging a positive oath. In other words, whether the first part of the affidavit could fairly be construed to be a positive affirmation, and must not necessarily be held to be an affirmation on information and belief, as a question of grammatical construction. That technical question of grammar is raised, therefore, not by the prosecution, but by the prisoner. As already stated, I think it could be so construed, and, indeed, that no other construction is strictly grammatical; and hence, that there was no error in the court below in not holding that the whole affidavit was necessarily upon information and belief. I disagree with the opinion, therefore, upon this point.
2. I agree with the opinion that there was error in the admission of evidence of Reid’s statements to the i extent they were allowed.
3. I also agree that the evidence as to the notary’s residence was, under the circumstances, improperly excluded. I am not prepared to' assent to the doctrine of the opinion that perjury can only be committed before an officer de jure ; and that, on the trial of an indictment for that crime, the title of such officer can always be attacked. Nor, indeed, am I prepared now to say that if, in the present case, the commission of the notary from the proper appointing power had been shown, that the prisoner could have raised such a question as non-residence. I am inclined to think that in such a contingency, the question of residence being often a very nice one, the validity of the appointment could not thus be attacked. But here there was hardly any proof that the party who took the affidavit was a notary at all. The list in the clerk’s office proved absolutely nothing; and, indeed, I do not see how it was admissible. The mere fact that he assumed to act as a notary was all the proof really given of his official position. It is doubtful, to my mind, whether *206 this was any proof of even color of office. But, if it be conceded that it tended in. some degree to show a de facto officer, or to raise a presumption or inference that he had been appointed, I think proof that the person was a non-resident, and therefore incapable of holding that position, was admissible to rebut any such presumption that he had ever been appointed, and was anything but a mere intruder. Of course, if legal proof of any sort of an appointment had beén made, there would be no longer any room for presumption upon this point, and nothing of that sort which could be rebutted ; but not so, as the case now stands.
Miller, Earl, and Hand, JJ., read for reversal and venire de novo. Church, Ch. J., concurred, first, on Reid declarations ; second, on rejection of evidence of non-residence of notary. Folgkeb, J., first, on Reid declarations; second, as to notary, with Hand, J. Rapadlo, J., first and second with Hand, J., and third with Eabl, J., on notary. Andrews, J., first, on Reid declarations; second, on construction of affidavit.
Judgment reversed.