In the Matter of the Application of THE BOARD OF SUPERVISORS OF SULLIVAN COUNTY to Acquire Land by Condemnation for the Proposed Construction of the Narrowsburg-Callicoon Part I and Part II County Highway, Sullivan County.

County Court, Sullivan County, May 13, 1933.

*Gardner LeRoy*, for the claimants William B. Schenck and another.

*John D. Lyons* [*Nellie Childs Smith* of counsel], for the petitioner.

Cooke, J. This is a proceeding to acquire lands by condemnation for highway purposes. Commissioners were appointed, the premises viewed, the evidence was taken and the awards were determined. On the application for an order to confirm their report, objections were filed as to the award as to one parcel by the attorney for William B. Schenck and Sarah Fleet Schenck.

The objections urged may be divided into two classes, those which may be termed technical or which call to our attention claimed irregularities in the proceedings, and the other which states that the award is grossly inadequate. As a rule, technicalities or irregularities are waived when not made in due time. It was said in *Matter of Grade Crossing Commissioners* (148 App. Div. 412, 415): " Purely technical objections, not going to the merits, and omissions in no way harmful to a party, do not authorize the Special Term to refuse confirmation of the commissioners' report."

. Here some objection is found to each commissioner. It is claimed that Lazarus I. Levine, at the time of his appointment, was not a freeholder; that although appointed in the month of June, 1932, in the fall of 1932 he was elected special county judge and surrogate of Sullivan county, and began his duties as such January 1, 1933. It is claimed that Adelbert M. Scriber, who is the owner and proprietor of a newspaper and job printing plant in Monticello, N. Y., did some work in 1932, the expense of which was chargeable to the county of Sullivan. It is also claimed that Paul A. A. Rouis signed his oath of office before he was appointed,

although the oath appears regular on its face. These objections we will consider first.

Section 151 of the Highway Law says: "Commissioners of appraisal to be appointed. Upon such presentation, such court shall, after hearing any person owning or claiming an interest in the lands to be acquired who may appear, appoint three disinterested persons as commissioners of appraisal."

It will be noted that the statute says, "three disinterested persons."

That is the test. Are the commissioners those who may be reasonably termed "disinterested?" It is helpful for us to know what the Court of Appeals has said upon this question. In *County* in *Matter of Grade Crossing Commissioners* (148 App. Div. 412, 415): *of Orange* v. *Storm King Stone Co.* (229 N. Y. 460, 463) we find: "There is, however, a marked distinction recognized in all the cases between a local and direct interest and the general interest of a taxpayer of the whole city or county. It is very doubtful whether the legislature would have the power to remove the disqualification of a direct and immediate interest. It could not make a man a judge in his own case. The provisions of the Constitution of the state of New York, section 6 of the first article, providing that no person shall be deprived of property without due process of law and that private property shall not be taken for public use without just compensation would, in my opinion, prevent the legislature from authorizing a person to serve as judge, juror or commissioner in a case or matter in which he was directly, substantially and vitally interested. A legislative act which should undertake to make a judge the arbiter in his own cause would be void. (*Matter of Ryers*, 72 N. Y. 1, 13; *Wynehamer* v. *People*, 13 N. Y. 378, 447; *People* v. *Sickles*, 156 N. Y. 541.)"

At page 466 it is stated: "I know that the statute requires the assessment of damages by a commission of three persons, but in determining the meaning of 'disinterested' it is helpful to ascertain its application to other triers of fact under the same conditions. Thus an action brought by or against the county to recover a large sum of money is tried before a judge or by a jury. Both will be disinterested though taxpayers within the county and liable to be assessed by the result. 'Disinterested' is given a meaning as it pertains to the judge or jury which permits them to be resident taxpayers; why should not the same meaning be given to the word when applied to a commissioner? He is a like part of the legal machinery for determining facts. Too strict an adherence to the letter sometimes weakens the law and obstructs its purpose. The purpose to furnish a fair and impartial tribunal is accomplished

when a commissioner is as unbiased as a judge or jury. To hold otherwise is to place more importance on the omission to use the word ' commissioner ' in the qualifying statutes than to gather the actual intent and purpose from analogy and reason. Words often change their meaning from time to time, especially when the legislature has modified their use. When we say to-day that a judge or juror must be disinterested and competent, it conveys a different idea than it did at common law. So as applied to a commissioner, the sentence has the modern, not the ancient significance.

" No reason has been suggested for adhering to a disqualification of a commissioner which no longer applies to a judge or a juror."

At page 469: " These words express exactly what I have been trying to reason regarding commissioners under our general statutes for land condemnation. They are disqualified when a judge or juror would be disqualified. They are disinterested and competent when a judge or juror is disinterested and competent."

That leads us to find out when a judge or juror is disqualified. This is set forth in section 15 of the Judiciary Law. " Disqualification of judge by reason of interest or consanguinity. A judge shall not sit as such in, or take any part in the decision of, a cause or matter to which he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity, or affinity to any party to the controversy within the sixth degree. The degree shall be ascertained by ascending from the judge to the common ancestor, and descending to the party, counting a degree for each person in both lines, including the judge and party, and excluding the common ancestor. But a judge of the court of appeals, or a justice of the appellate division of the supreme court, * * * shall not be disqualified from taking part in the decision of an action or special proceeding in which an insurance company is a party or is interested, by reason of his being a policyholder therein."

By any stretch of reasoning, neither of these commissioners can be brought within that section. Neither was interested in the matter, neither was a party thereto and neither was related to any party to the controversy.

By chapter 88 of the Laws of 1854 authority was given for the election of a local officer to discharge the duties of county judge and surrogate of Sullivan county in cases of vacancy or inability of such officer. Now we have section 12 of article VI of the Constitution providing for the election of a special county judge.

Section 73 of the Civil Practice Act is as follows: " Incapacity of county judge or special county judge. If the county judge is for any cause incapable to act in an action or special proceeding pending

in the county court, or before him, he must make, and file in the office of the clerk, a certificate of the fact; and thereupon the special county judge, if any, and if not disqualified, must act as county judge in that action or special proceeding. Upon the filing of the certificate, where there is no special county judge or the special county judge is disqualified, the action or special proceeding is removed to the supreme court, if it is then pending in the county court; if it is pending before the county judge it may be continued before any justice of the supreme court within the same judicial district."

It is, therefore, evident that the special county judge could not be called upon to act as county judge in any matter affecting this proceeding unless the county judge was incapable of acting and filed his certificate to that effect. If that should have happened after January 1, 1933, then the special county judge would have been disqualified and the proceeding would have been removed to the Supreme Court.

The special county judge and surrogate of Sullivan county receives a salary of $600 per year. There is no prohibition anywhere that he cannot practice law or act as a commissioner to which I have been referred, except that section 19 of article 6 of the Constitution prohibits him from appearing or acting as counsel for a defendant in any criminal case or proceeding pending in his own county or in an adjacent county. It would be useless to expect any attorney to act as special county judge and surrogate unless he could practice. He was not special county judge and surrogate when he was appointed commissioner and, even if he were, there does not appear to be any good reason why he should not have acted.

There are several newspaper plants in Sullivan county. Without doubt they all do work, more or less, each year which is a county charge. They do not come within the rule of being *directly, substantially and vitally* interested in this matter. (*County of Orange* v. *Storm King Stone Co.*, 229 N. Y. 460.) Neither do any of the commissioners come within that rule.

As to the oath of one of the commissioners, it is claimed that this was taken before he was appointed. If there were no oath at all, he would still be an officer *de facto* and third persons would be protected in their dealings with him.

In *People* v. *McDowell* (70 Hun, 1, 4) we find: " But as to third persons or strangers, whose rights are dependent upon his official acts, it is sufficient for them to show that he was an officer *de facto*.

" Chancellor WALWORTH, in *People* v. *White* (24 Wend. 539), says: 'An officer *de facto* is one who comes into a legal and constitu-

tional office by color of a legal appointment or election to that office; and as the duties of the office must be discharged by some one for the benefit of the public, the law does not require third persons, at their peril, to ascertain whether such officer has been properly elected or appointed, before they submit themselves to his authority, or call upon him to perform official acts which it is necessary should be performed.' "

In *Wilcox* v. *Smith* (5 Wend. 231, at pp. 232, 233) Judge SUTHER-LAND says: " The principle is well settled, that the acts of officers *de facto* are as valid and effectual when they concern the public or the rights of third persons, as though they were officers *de jure*. The affairs of society could not be carried on upon any other principle.

" In *The People* v. *Collins*, 7 Johns. R. 549, the town clerk of Turin refused to record the survey of a road, because one of the commissioners who signed the survey had not taken the oath of office and filed it with the clerk, as was required by law. The court held that the clerk, a mere ministerial officer, had no right to inquire into the authority of the commissioners and to adjudge their acts to be void; that, acting as commissioners under color of an election, their acts were valid, and their title could not be inquired into collaterally. In *M'Instry* v. *Tanner*, 9 Johns. R. 125, upon certiorari, it was contended that the judgment was void, on the ground that the justice who rendered it was a minister of the gospel, and incapacitated by the constitution from holding any office. The court held that the title of the magistrate could not be drawn in question in this manner; that they were to intend that he acted under a regular commission, and being an officer *de facto*, his acts in relation to the public and third persons were valid."

The rule as laid down in *Matter of Baker* (173 N. Y. 249, 254) is: " No objection was taken to the commissioners at the time the parties appeared before them at the trial of the questions involved. No objection was taken during the trial. The objection was reserved until after a long trial involving much expense, and was then made upon the application for the confirmation of the report. We think that even if there was a defect, it not being jurisdictional was deemed waived. In *Matter of N. Y., West Shore & Buffalo Ry. Co.* (35 Hun, 575) one of the commissioners appointed turned out not to be a freeholder. BRADLEY, J., in delivering the opinion, said: ' But after jurisdiction is acquired such strict observance may be waived. The parties might dispense with the qualification of freeholder for the commissioner.' "

This whole matter is ably discussed in *Matter of Grade Crossing Commissioners* (148 App. Div. 412). Mr. Justice McLENNAN,

writing for the court, says: " It is elementary that a report of commissioners in condemndation proceedings must be confirmed unless there is shown to have been misconduct or palpable mistake on the part of the commissioners which resulted in harm to a party interested in the proceeding. Purely technical objections, not going to the merits, and omissions in no way harmful to a party, do not authorize the Special Term to refuse confirmation of the commissioners' report. (*Matter of New York Central & Hudson River Railroad Company*, 64 N. Y. 60.) All of the objections made by the respondents to the confirmation of the report of the commissioners, except the objection that such commissioners had not taken a proper oath of office, were properly overruled by the learned justice at Special Term for the reasons stated in his opinion, which is reported in *Matter of Grade Crossing Comrs.* (69 Misc. Rep. 23) and the reasons for overruling such objections need not be further amplified. None of such objections in any manner affected the merits of the controversy, and all were known or upon the slightest investigation might have been known to the respondents while the hearing was in progress and no objection was made by either of them until the report was made. It would seem intolerable that a party to such a proceeding may sit by, take a part in the litigation upon the merits, with full knowledge of the alleged irregularities and wait until a report is made or decision rendered and then, in case such report or decision is adverse to him, for the first time to insist that such irregularities render such report or decision of no binding force or effect. It cannot be pretended that either of such irregularities in any manner affected the award which was made to the respondents. The learned court below, however, thought that the failure of the commissioners to take the oath of office prescribed by the Grade Crossing Act was jurisdictional and that because of such failure the report could not be confirmed. The oath taken was the oath prescribed by the Constitution (Art. 13, § 1), and by it each commissioner did ' for himself solemnly swear * * * that he will faithfully discharge the duties of the office of commissioner in the above-entitled proceeding to the best of his ability.' In the oath prescribed by the Grade Crossing Act (Laws of 1888, chap. 345, § 12, as amd. by Laws of 1890, chap. 255, § 9) there was added or inserted ' and to ascertain and report the just compensation to be paid to the owners of and parties interested in the lands for taking the same or for the injury thereto.' So far as we can discover, there is really no substantial difference in the meaning of such oaths. Each required the faithful discharge of their duties as such commissioners, and in the oath taken it was recited that they were appointed and were to act in pursuance of the provisions of the

Grade Crossing Act. But independent of which oath would have been the most appropriate to have been taken, the oath was taken publicly or at a regular meeting of the commission; at least, it was a part of the record, accessible to the inspection of any party interested, and we think it will not do for a party to sit by with full opportunity to examine such oath, wait until the evidence is closed and a report made, and then for the first time raise the objection that the oath taken by the commissioners was defective. Section 3368 of the Code of Civil Procedure provides: ' The provisions of title one of chapter eight of this act shall also apply to proceedings had under this title ' [condemnation proceedings], and section 721 of said Code, which is in title 1 of chapter 8 thereof, provides: ' In a court of record, where a verdict, report or decision has been rendered, the judgment shall not be stayed, nor shall any judgment of a court of record be impaired or affected, by reason of either of the following imperfections, omissions, defects, matters, or things, in the process, pleadings or other proceedings: * * * 12. For an omission on the part of a referee to be sworn; or for any other default or negligence of the clerk, or any other officer of the court, or of a party, his attorney or counsel, by which the adverse party has not been prejudiced.' It cannot be claimed in this proceeding that any injury resulted to the respondents because of the failure of the commissioners to take the oath prescribed by the Grade Crossing Act, that at most such failure was an irregularity, was in no sense jurisdictional, and that for such failure confirmation of the report should not have been denied. The commissioners in this case were among the first citizens of the city of Buffalo, were appointed practically with the consent of all the parties interested, at least no objection was made to either of them. They heard all the evidence offered by any party bearing upon the question of injury to their respective properties. They made a report which is acquiesced in by all the persons interested except the three property owners who are respondents upon this appeal. The learned court at Special Term did not consider that the awards made by the commissioners to them, respectively, should be set aside because inadequate, and an examination of the evidence satisfies me that the court was right in that regard.

" We conclude that none of the objections made to the confirmation of the report of the commissioners is tenable.

" It follows that the order should be reversed, and the motion to confirm the report granted, with costs."

We come to the question, is this award grossly inadequate? To answer it we must look to the law and to the evidence. The burden of proving this contention at this time is upon the claimants.

In *Matter of Gilroy* (78 Hun, 260, 261) the court says: " But it must be recognized that the commissioners were not entirely bound by the oral testimony; they saw the property, its location and capabilities, and their report must stand unless it is apparent that the sum awarded is so grossly inadequate as to afford evidence of partiality, fraud or undue influence; it must appear that the award is grossly inadequate to justify a court in setting it aside.

" The rule is well settled that except in extreme cases an appellate court will not set aside an assessment, unless the same is clearly proved to be grossly inadequate, or unless it appears that the commissioners fell into some error in their estimates, or adopted some erroneous principle."

In *Akin* v. *Water Commissioners* (82 Hun, 265, 268) we find: " Upon the question of damages there was a conflict of testimony before the commissioners, and while the preponderance of evidence appearing upon the record is rather in favor of the defendants, yet the commissioners viewed the premises alleged to have been injured, and are, therefore, much better able to determine what estimate of the damages was the nearest to being fair and just than the court can possibly be, and while this court is not necessarily governed by the fact that the commissioners have made a personal inspection of the premises alleged to have been injured, yet that fact, together with the other one, that the damages awarded do not appear to be grossly excessive, it seems to me calls for an affirmance of their decision and of that of the Special Term which confirmed their award." (See, also, *Matter of Simmons*, 132 App. Div. 574.) This opinion, written by Mr. Justice COCHRANE, in which the order was unanimously affirmed, says in part: " The functions and duties of commissioners of appraisal in condemnation proceedings are vastly different from those of the Court of Claims. It is well settled that the former may seek information from various sources and supply themselves with knowledge pertaining to the subject-matter of their inquiry independently of the parties and that they are unhampered by technical rules of evidence and unrestricted as to their sources of information. (*Matter of Thompson*, 85 Hun, 438, 443; *City of Syracuse* v. *Stacey, No. 1*, 45 App. Div. 249, 259; *Matter of Staten Island Rapid Transit Co.*, 47 Hun, 396; *Harlem River & Portchester R. R. Co.* v. *Reynolds*, 50 App. Div. 575; *New York & Massachusetts R. R. Co.* v. *Lent*, 22 N. Y. St. Repr. 839.) The information thus acquired by the commissioners, independently of the evidence produced by the parties, may properly be utilized by said commissioners. In the very nature of things it does not get into the record and cannot be considered by an appellate court. We are obliged to assume, in reviewing their determination, that

the commissioners acquired and made proper use of such evidence in reaching their conclusion, as well as the written evidence produced by the parties, and that they also acted upon the personal inspection of the real estate which the statute requires them to make."

It is claimed that one of the witnesses for the petitioner placed the damages at $3,000 and the other at $2,800. Witnesses for claimants fixed the damages at a higher figure. The award was $2,900 — $100 one way or the other would, of course, be difficult to determine. The deduction would be that it was about that sum in their opinion.

These three commissioners had no reason in fixing the award, other than to be fair and honest and to use their best judgment. It was their combined opinion after counsel and deliberation. It was their responsibility. Their award should be followed " unless the same is clearly proved to be grossly inadequate." They saw the property, its location, its possibilities, etc.

" The ordinary rule is that an award will not be set aside unless the commission has adopted the wrong principle in estimating damages or the award is so grossly inadequate or excessive as to shock the sense of justice." (*Matter of Schmeider*, 130 Misc. 136, 138.)

The fair and reasonable market value of a piece of property depends upon many items. Its location, desirability, the probable uses to which it may be put, the demand in that section, etc., all have a bearing upon its value. The commissioners were appointed for the purpose of determining the damages. It is regrettable, of course, that claimants are sometimes dissatisfied. But some one must fix the amount. The commissioners, no doubt, did their best in attempting to be fair to all parties concerned. The weight of authority in these matters leads to the conclusion that their report should be confirmed.

Order may be submitted confirming the report. Order to be agreed upon or settled on notice.