(No. 22451.—)
LUNA TRAMMEL, *et al.* Appellees, *vs.* HUBERT TRAMMEL, *et al.*—(LUCY TRAMMEL, Appellant.)

*Opinion filed June 19, 1934.*

DURFEE & HOLMES, for appellant.

C. O. CONLEY, and WILLIAM B. MORRIS, for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

John J. Trammel and Lucy Fritch (also known as Lucy Trammel, the appellant,) were married December 2, 1930, by Ray Burns, who had been elected a justice of the peace in November, 1929, in Eddyville precinct, Pope county. This election was the regular quadrennial one, at which two justices were elected for each precinct in counties like Pope, which are not under township organization. Burns had moved his residence from Eddyville to Alexander precinct during the preceding summer. He was therefore no longer a resident of the political subdivision for which he had been elected. No irregularity or defect is pointed out in the marriage except that it is claimed that Burns had lost his authority to perform marriage ceremonies by his removal from Eddyville precinct. Trammel died intestate on September 18, 1932. Thirteen of his children filed a

bill for partition in the circuit court of Pope county. They made the fourteenth child and Lucy Fritch defendants. Lucy Fritch Trammel filed a cross-bill, claiming, as his widow, dower and homestead in the lands of which Trammel died seized. The circuit court dismissed the cross-bill for want of equity and decreed partition as prayed in the original bill. This appeal followed.

The effect of the chancellor's rulings was that the marriage between John J. Trammel and Lucy Fritch was void because Burns, the justice of the peace who performed the ceremony, had moved out of the precinct for which he was elected.

Appellant contends, first, that by the removal of the justice he was not divested of his official authority; second, that even if he was not a justice of the peace *de jure* he was a justice of the peace *de facto* and that his official acts are not open to collateral attack; and third, that under the circumstances of the marriage it is legal whether the party who officiated at the ceremony was authorized to do so or not.

Section 32 of article 6 of the Illinois constitution provides that the elective and appointive officers referred to in that article shall, "respectively, reside in the division, circuit, county or district for which they may be elected or appointed." The office of justice of the peace is one of those mentioned in the article. Section 1 of chapter 79 (Smith's Stat. 1933, p. 1752,) provides for the election of justices of the peace in the counties mentioned, and section 7 of that chapter provides for filling vacancies in case of "death, resignation, removal from the town or precinct, or other cause."

Appellees rely upon section 32 of article 6 of the constitution and sections 1 and 7 of chapter 79 of the statutes, above referred to, to support the contention that Burns was neither a justice of the peace *de jure* nor *de facto* after his removal from Eddyville precinct. There is no

disagreement as to the fact that Burns had been elected and that he had qualified and had acted as a justice of the peace. At one time he was a *de jure* officer. He still retained his docket and had not delivered it to the county clerk. If a direct attack had been made it would have succeeded because of the fact that he no longer resided in the precinct for which he was elected justice of the peace. The attack here, however, is collateral and not direct. The act sought to be avoided is ministerial in character rather than judicial. In *Pritchett* v. *People*, 1 Gilm. 525, we said: "At the time these acts were performed courts of probate had by law the unquestionable right to grant letters testamentary and of administration and to take bonds from executors and administrators. These are ministerial and not judicial acts. Whether Lester was *de jure* the judge of probate for Marion county cannot be inquired into collaterally in this suit. The only way in which that question could be properly determined would be in a proceeding instituted for the purpose of testing his right to the office. It is sufficient for all the purposes of this case if he was *de facto* the judge of probate. It is a general principle of the law that the ministerial acts of an officer *de facto* are valid and effectual when they concern the public and the rights of third persons although it may appear that he has no legal or constitutional right to the office. The interests of the community imperatively require the adoption of such a rule. [Citing cases.] To constitute an officer *de facto* there must be some color of right to the office or an acquiescence on the part of the public for such a length of time as to authorize the presumption, at least, of a colorable election or appointment.—*Wilcox* v. *Smith*, 5 Wend. 231."

In the *Pritchett case*, Lester, the judge of probate, had been appointed to serve until the adjournment of the legislature. It adjourned without appointing a new judge. He had been appointed by the Governor to fill a vacancy on

March 2, 1836, and his office became vacant when the legislature adjourned on March 6, 1837, without having elected a judge of probate for Marion county. Lester was appointed to serve until the happening of a particular contingency and not until his successor was elected and qualified. He continued to exercise the functions of the office. In spite of these facts we held that his acts were done under such color of title to the office as to render such acts valid as between the parties to the suit on the bond approved by him and that his tenure in office was not open to a collateral attack.

In sustaining the levy and collection of a district school tax by officers of a *de facto* school district we said in *Trumbo* v. *People,* 75 Ill. 561: "It is a well settled principle that the acts of officers *de facto* are as valid and effectual, when they concern the public or the rights of third persons, as though they were officers *de jure,* and that the title to an office, in such a case as the present, cannot be decided in a collateral suit but it must be in a direct proceeding." (Citing cases.) To the same effect are the holdings in *Sharp* v. *Thompson,* 100 Ill. 447, and *Barlow* v. *Standford,* 82 id. 298.

In the case before us, as in *Pritchett* v. *People,* 1 Gilm. 525, the officer had obtained his office legally. In both cases the acts done were ministerial in character, and in both, again, these acts occurred after the actual authority of the officer had apparently ceased to exist. In both cases these acts affect the rights of third persons, and they are both cases in which no right of collateral attack is recognized to exist. For this reason the chancellor erred in dismissing the cross-bill for want of equity, and thereby holding, in effect, that the marriage between John J. Trammel and Lucy Fritch was illegal and void. The authority of Burns, as such justice of the peace, to perform the marriage ceremony, could not be questioned collaterally in the suit for partition.

What has been said answers both contentions made by appellees: First, that a marriage is void unless performed by some of the persons mentioned in section 4 of chapter 89; (Smith's Stat. 1933, p. 1831;) and second, that by his removal from the precinct the officiating justice of the peace was divested of all power and authority to perform a marriage ceremony.

For the reasons indicated, the decree of the circuit court of Pope county is reversed and the cause is remanded to that court, with directions to render a decree in conformity herewith. *Reversed and remanded, with directions.*